CHARLES C. SEWALL, executor, *vs.* HELEN M. ROBERTS & others.

Suffolk. March 23, 24. — June 20, 1874. AMES & DEVENS, JJ., absent

A voluntary settlement fully executed cannot be revoked or altered by a second settlement of the same property, in the absence of any provision in the deed of settlement reserving such power to the settler.

A. in 1825 made a voluntary conveyance, without reserving any power of revocation, of personal property to an annuity company in trust to pay the income to him for life, and upon his death to transfer the principal sum to his executor or administrator, in trust for the special use and benefit of any child or children of A.; if one only, in trust for his or her use and benefit; if more than one, for their use and benefit equally, the legal representatives to take their parent's share; in case of A.'s death without leaving any issue, to pay the principal to the mother of A. for her own use; in case A. survived his mother and died without leaving any lawful issue, then to pay the principal sum to his executor or administrator in trust for the use of his heirs at law and the heirs at law of his mother equally to be divided between them. A. subsequently undertook to change the terms of the settlement. In 1865 he adopted a child in pursuance of the provisions of the Gen. Sts. *c.* 110, and died in 1872, leaving no other child. *Held,* that A. had an equitable life estate, and no power to change the terms of the settlement. *Held, also,* that the adopted child took the remainder of the property as a " child " under the settlement, as one of the " legal consequences and incidents of the natural relation of parents and children," by virtue of the Gen. Sts. *c.* 110, § 7.

The provisions of the Gen. Sts. *c.* 110, § 7, declaring that an adopted child " shall be deemed, for the purposes of inheritance by such child and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in natural wedlock," is not unconstitutional unless it interferes with vested rights.

Under the Gen. Sts. *c.* 110, if the parents of the child to be adopted are dead, and the Probate Court on the petition of the guardian of the child for leave to adopt it, which is assented to by the petitioner as guardian, makes a decree in accordance with the prayer of the petition, the fact that no guardian *ad litem* was appointed, even if such appointment should have been made, does not make the decree void, but voidable only, and it cannot be avoided by a stranger to the injury of the child.

BILL IN EQUITY by the executor of the will of Robert Roberts, to obtain the instructions of the court as to the disposal of the trust fund hereinafter mentioned. The case was reserved by *Ames,* J., on the bill, answers and report; and thereby appeared to be as follows :

On June 2, 1825, Nathaniel Curtis and Isaac Clapp, the administrators of Robert Roberts, Senior, calling themselves trustees of Robert Roberts of Boston, the testator, deposited with the Massachusetts Hospital Life Insurance Company the sum of one

hundred thousand dollars, and received from the company the following instrument in writing signed by its officers :

" The Massachusetts Hospital Life Insurance Company, in consideration of the principal sum of one hundred thousand dollars received by them of Nathaniel Curtis and Isaac Clapp, trustees of Robert Roberts, of Boston in the State of Massachusetts, in trust, as hereafter mentioned, the receipt whereof is hereby acknowledged, do hereby promise and agree to and with the said N. Curtis and I. Clapp, trustees, their executors and administrators, that the said company shall and will invest the same in bank or other stock, or in real estate, or place the same out at interest on mortgage or other security at the discretion of the directors ; and that the said company shall and will yearly and every year during the natural life of said Robert Roberts, of Boston in the State of Massachusetts, pay or cause to be paid to the said Robert in annual payments on the first days of January in each and every year during the natural life of the said Robert (upon his separate order and receipt, to be dated on or subsequent to the several days on which the said several payments shall fall due ; which annuity and principal sum are both hereby declared to be inalienable by the respective grantees thereof, and not subject to their debts or control), the first payment to be made on the first day of January next, the same rate of interest on said principal sum as the company shall actually make and receive upon their capital stock paid in and the other property in their possession, including real estate, stocks of the United States, bank or other stock, notes, bonds and mortgages, after deducting all necessary expenses and charges (excepting office rent and the salaries of the company's officers and servants), and all actual losses by bad debts or otherwise, not arising from the actual fault of the company or their servants, and also half of one per centum per annum for the expenses of their office, and the labor, trouble, and responsibility of investing, taking care of and managing said trust properly. The said principal sum received of said N. Curtis and I. Clapp, trustees, to be invested and managed, and the amount of the income thereof to be estimated, ascertained and determined, by the directors of said company, in the way and manner provided in the extract from the article on annuities in trust, printed at the bottom. Interest to commence June 22, 1825.

" And the said company, for the consideration aforesaid, fur‑ ther promise and agree to and with the said N. Curtis and 1. Clapp, trustees, their executors and administrators, that in sixty days after proof of the decease of the said Robert, they will assign, transfer and pay the amount of the aforesaid principal sum, (or such part thereof as shall not have been lost by bad debts or otherwise, without the actual fault of said company or their ser‑ vants,) and all interest then due thereon at the time of his death, in real estate, stocks, notes, bonds and mortgages belonging to said company, all, any or either of them, at the pleasure and discretion of the directors, at the prices at which the same re‑ spectively shall stand charged in the books of the company at the decease of said Robert, in the way and manner provided in said extract from said article, to his executor or executors, admin‑ istrator or administrators, in trust for the special use and benefit of any child or children of said Robert Roberts; if one only, in trust for his or her use and benefit; if more than one, for their use and benefit equally, the legal representatives to take their parent's share; and in case the said Robert Roberts shall die with‑ out leaving any issue, then at his decease to pay said principal sum to his mother, Eliza Roberts, for her own use; but in case the said Robert Roberts shall die without leaving any lawful issue, and his said mother shall die before him, then at his decease to pay said principal sum to his executor or executors, adminis trator or administrators, in trust for the use of his heirs at law and the heirs at law of his said mother, equally to be divided be‑ tween them." Evidence was introduced upon the question whether the money deposited in trust was derived by the tes‑ tator by inheritance from his father, a statement of which is unnecessary for the understanding of the questions of law decided.

On July 17, 1855, an indenture was executed under their hands and seals, between the testator and his mother, Eliza Roberts, of the first part, Nathaniel Curtis, Junior, of the second part, and Helen M. Roberts, wife of the testator, of the third part, which, after reciting the terms of the annuity in trust be‑ fore mentioned, proceeded as follows : " Now this indenture wit‑ nesseth, that the said Robert and Eliza Roberts, the parties of the first part, in consideration of one dollar to them severally paid by the said Nath'l Curtis, Junior, party of the second part, and for

other good and valuable considerations them thereto moving, in the event of the said Robert Roberts dying leaving his said wife surviving, but without leaving any issue, do hereby severally give, grant, sell, assign and transfer to the said Curtis, his executor or executors, administrator or administrators, all their respective rights, titles and interests in and to said principal sum of one hundred thousand dollars, to hold upon the following trusts; to wit, during the life of the said Helen M. Roberts, party of the third part, to reinvest the same with the Massachusetts Hospital Life Insurance Company, and to collect the incomes or profits arising therefrom, and after paying and deducting a reasonable compensation for his services, to pay over the residue of the income to the said Helen M. Roberts, the party of the third part, during her life, to her sole and separate use, independently of any husband; and upon her decease to convey, pay over and transfer the principal sum to such person or persons as would have been entitled to the same if the said Robert Roberts had deceased at that time, and these presents had not been executed."

Eliza Roberts died in the latter part of 1855, and the testator on March 27, 1865, executed an instrument under his hand and seal, as follows :

" Whereas by an indenture dated July 17, 1855, between me and my mother, Eliza Roberts, since deceased, of the first part, Nathaniel Curtis, Junior, of the second part, and Helen M. Roberts, my wife, of the third part, a conveyance was made by me and my said mother to said Curtis of all our interests in the sum of one hundred thousand dollars, deposited in the Massachusetts Hospital Life Insurance Company, after my death; and whereas by the death of my said mother I have become her sole heir at law, and an interest then contingent in said sum may have since become vested in me :

" Now know ye that, in consideration of the premises and of one dollar to me paid by said Curtis, the receipt whereof is hereby acknowledged, I hereby ratify and confirm the said indenture, and hereby sell, assign and convey to said Curtis all my right, title and interest in said principal sum of one hundred thousand dollars, to hold upon the following trusts : to wit, during the life of said Helen M. Roberts to reinvest the same with said life insurance company, and to collect the income and profit aris-

ing therefrom, and after paying and deducting a reasonable com
pensation for his services, to pay over the residue of the income
to the said Helen M. Roberts during her life, and after her de-
cease upon the trusts declared in said indenture."

On May 7, 1864, the testator presented a petition to the Pro-
bate Court for Norfolk County, for his appointment as guardian
of Ada Parker, and said court on the same day, her parents being
both dead, but her grandparents all living and assenting thereto,
but without the appointment of any guardian *ad litem*, or the
assent of any one acting as next friend, appointed the testator as
guardian, as prayed for. A bond was given, but no inventory
was ever returned.

On April 1, 1865, the testator and his wife presented a petition
signed by them to said Probate Court, for the adoption of said
Ada Parker, she being then under the age of fourteen years, and
for the change of her name. This was assented to by the testator
as guardian. All the said grandparents who signed their assent to
his appointment as guardian were living at the time of the pre-
senting the petition for adoption, and the decree thereon ; but
nothing appears on the records or files of said court tending to
show that said grandparents, or either of them, had any notice
or knowledge of such petition or proceedings ; no notice or order
of notice was issued on such petition for adoption, no guardian *ad
litem* was appointed, and, so far as the records show, no one acted
or assented as the next friend of said Ada Parker; and on the same
day said court decreed that " from this day said child shall, to all
legal intents and purposes, be the child of said petitioners, and
that its name be changed to that of Ada Parker Roberts."

In April, 1872, the testator died, leaving no issue or child, un-
less said Ada is such, but leaving a will, dated April 3, 1865, and
duly proved, the clauses of which material to this case are as fol-
lows :

" Second, whereas I, the said Robert Roberts, am lawfully enti-
tled to and do receive annually of the ' Massachusetts Hospital Life
Insurance Company,' an incorporated company in the Common-
wealth aforesaid, having their place of business in the city of Boston
in the County of Suffolk and Commonwealth aforesaid, the rents,
income, interest, and profits of the principal sum of one hundred
thousand dollars, held by said company in trust upon the condi-

tions contained in a certain ' annuity of trust,' it being numbered ' three,' and bearing date the second day of June in the year of our Lord one thousand eight hundred and twenty-five, I do now give, bequeath and devise to my beloved and devoted wife, Helen M. Roberts, the whole of said rents, income, interests and profits for and during her natural life ; and at her decease I give, bequeath and devise the one half of said rents, income, interests and profits to my daughter by adoption, Ada Parker Roberts, and the other half of said rents, income, interests and profits to Helen S. Brown and Susan H. Brown, children of Henry S. Brown of the city of Milwaukee in the State of Wisconsin, share and share alike, or to the survivors for and during their natural life.

" Third, I give, bequeath and devise to my said wife, Helen M. Roberts, all the rest, residue and remainder of all my estate, of whatever name and nature or wherever found, whether real or personal estate, to her the said Helen M. Roberts, her heirs and assigns forever."

The persons who would have been heirs at law of said Eliza Roberts at the time of her death, if the testator, her only child and heir, had not then been living, were Ephraim Harlow, her brother, and David Harlow, Hannah T. Robbins and Sylvanus Harlow, children of Jesse Harlow, another brother of said Eliza, and Desire H. Felt, daughter of Desire H. Stephens, a sister of said Eliza.

The persons who would have been heirs of said Eliza Roberts if she had died when her son Robert Roberts, the testator, died, are Hannah S. Adams, Zilpha W. H. Spooner and Jane H. Drew, children of said Ephraim Harlow, brother of said Eliza.

If the said Ada Parker is not the child and heir at law of said Robert Roberts, named in said instrument of annuity in trust, within the intent and meaning of that instrument, then his heirs at law are said Robert Clark, Mary C. Brooks and Eliza H. Clark, the only children of Mary Clark, the only sister of Robert Roberts, Senior, (the only brother of said Robert Roberts, Senior, having died in infancy without issue,) and Hannah S. Adams, Zilpha W. H. Spooner and Jane H. Drew, all children of said Ephraim Harlow.

*S. E. Sewall*, for the plaintiff.

*W. Colburn*, for Ada Parker Roberts.

*J. B. Richardson*, for Mary E. Brooks, administratrix of the estate of Mary C. Brooks; Eliza H. Clark; and Andrew L. Alden, administrator of the estate of Robert Clark. 1. The testator had no power to modify the indenture of trust. 2. Ada Parker Roberts was not legally adopted. The guardian could not assent to his own petition. The duty of a guardian in such case requires the exercise of judgment, discretion and choice. To allow the petitioner to perform the duty of guardian would be to allow him to be a party and judge in the same cause. *McGregor* v. *Crane*, 98 Mass. 530. *Williams* v. *Robinson*, 6 Cush. 333. 3. Ada Parker Roberts was not the child and heir at law of Robert Roberts, within the intent and meaning of the annuity in trust. The first legislation in this State in regard to adoption was in 1851, twenty-six years after these words, heirs at law, had been written in this contract, and after these words had been defined by courts, used by legislatures, and by all persons in one common, certain and well-understood sense and signification.

Heirs at law then meant kindred by blood and no others; no such artificially made heir as this, a stranger to the blood, family and kindred, made heir by a mere proceeding at law, could have then been imagined or conjectured. It was contrary to all ideas and notions of all persons taking their definition from the common law: "*Solus Deus potest facere heredem, non hcmo.*" Co. Lit. 191 *a*, § 6, 3, n. "The word 'heir' in legal understanding signifies him to whom lands, tenements or hereditaments, by the act of God and right of blood, descend of some estate of inheritance." "He only is heir who is *ex justis nuptiis procreatus.*" Broom's Legal Max. (5th ed.) p. 515. 3 Washb. Real Prop. 6. And in this common law sense and meaning was the term used, and should be construed in this instrument. The time when a contract is made is to be regarded in expounding it. *Eaton* v. *Smith*, 20 Pick. 150. Met. Con. 309. And, where language has in any case acquired any peculiar meaning with reference to the subject matter of the contract, that meaning should prevail in that particular case. Met. Con. 275. *Haley* v. *Boston*, 108 Mass. 576. Technical terms should receive a technical interpretation. *Clarke* v. *Cordis*, 4 Allen, 466.

The general rule in the interpretation of a contract is to give to it the effect which the parties intended. *Haley* v. *Boston*, 108

Mass. 576. "Heirs" has often been construed to mean "children" or "issue," in order to carry out the intention of the party. *Ellis* v, *Essex Merrimack Bridge*, 2 Pick. 243. *Bowers* v. *Porter*, 4 Pick. 198. *Haley* v. *Boston*, 108 Mass. 576. The point decided in this last case was that the term "without heirs" signified "without children." A consideration of the existing law, the time, the circumstances and the language of the instrument, leads to the conclusion that the term "heirs at law" then meant kindred, — those who had right by blood, those who were or could be heirs at law at that time. The term "heirs at law" cannot in this case be construed to include Ada Parker without giving to the act of 1851 a retroactive operation contrary to the general rule. *King* v. *Tirrell*, 2 Gray, 331. *North Bridgewater Bank* v. *Copeland*, 7 Allen, 139. *Garfield* v. *Bemis*, 2 Allen, 445.

In *King* v. *Dedham Bank*, 15 Mass. 447, the court said : "Having ascertained the nature and legal effect of the contract when made, we cannot give it a different construction in consequence of the statute which was afterwards passed."

The Gen. Sts. *c.* 110, § 7, are far from giving an adopted child the character of an "heir at law." They do not even apply that term to him. They confer upon him a right " for the purposes of inheritance ; " but it is plain that Ada Parker cannot take any of this money by inheritance. It is not the case or estate of inheritance. This money does not descend from Robert Roberts. Whoever takes it does so as purchaser, or by gift, under this contract. 4 Dane Ab. 512. *Sedgwick* v. *Minot*, 6 Allen, 171.

The words "heir at law," in the contract, are words of description, not of limitation. Nor do the words "other legal consequences and incidents" have any force to enlarge the right or power of such child to take property not hereditable. The limitation that the adopted child shall not take "by right of representation," not only by express declaration, omits or forbids many things essential to make him an "heir at law," but leads to the conclusion that the legislature intended to limit his right of taking property strictly to inheritance from its parents by adoption, of such estates or property as the parents owned absolutely, and of which they had the ful unqualified right of disposal.

In the same clause in this instrument which contains the words "heirs at law," are the words "child or children," and "issue," and "lawful issue," and it is plain that the term child is used in the same sense as issue, and means issue, and lawful issue, which sense and meaning would certainly not include Ada Parker; but if Ada Parker in the meaning of the instruments is not the child of Robert Roberts, certainly she is not his heir at law, because under the statute the person adopted becomes an "heir at law" only by becoming a "child" of any person. If this adopted child can come in anywhere in said instrument, it would seem to be under the clause "child or children of Robert Roberts," and the parties to the instrument plainly intended that if Robert Roberts had a child the principal sum should go to it upon his death; but it is clear from the clauses which follow that the "child or children" which they meant was "issue," or "lawful issue," and no other. If the mother of the testator had survived him this adopted child would in no event have received anything, because the mother was to receive the principal sum if the testator "died without leaving issue," which would have been the case at any time, and because the child could not take by right of representation; but this certainly was not the fate which the parties to the contract meant should await any person who should be a child of Robert Roberts.

*D. E. Damon*, for Barnabas Churchill, administrator of the estate of Hannah T. Robbins; Eliza S. Harlow, administratrix of the estate of David Harlow; Jesse Harlow, administrator of the estate of Sylvanus Harlow; Alden Chase, administrator of the estate of Desire H. Felt.

*I. D. Van Duzee*, for Jane H. Drew.

*E. Ames*, for Zilpha W. H. Spooner and Hannah S. Adams.

*B. F. Thomas*, for Helen M. Roberts. The language of the annuity in trust if applied to real estate would create an estate tail in Robert Roberts. It is within the principle of the rule; the estate is limited to the issue, the heirs of the body of the grantee. *Wild's case*, 6 Rep. 16 b. *Wood* v. *Baron*, 1 East, 259. *Nightingale* v. *Burrell*, 15 Pick. 104. *Albee* v. *Carpenter*, 12 Cush. 382. *Burford* v. *Lee*, Freem. Ch. 210. *Anonymous*, lb. 287. Fearne Cont. Rem. 112. 2 Roper Leg. 1522.

A devise to one and his children, he having no children at the time, is a devise to him and his issue, and creates an estate tail. *Nightingale* v. *Burrell, supra. Baile* v. *Coleman,* 2 Vern. 670. *Sweetapple* v. *Bindon,* 2 Vern. 536. *Butter* v. *Ommaney,* 4 Russ. 70. *Gawler* v. *Cadby,* Jac. 346. *Butterfield* v. *Butterfield,* 1 Ves. Sen. 133. *Robinson* v. *Fitzherbert,* 2 Bro. Ch. 127.

It is a settled rule that the same words which would create an estate tail as to freeholds give an absolute interest as to chattels. *Albee* v. *Carpenter, supra.* Fearne Cont. Rem. 463, and cases cited. It is immaterial that the interest or income only is given for life. *Tothill* v. *Pitt,* 1 Madd. 488; *S. C.* 7 Bro. P. C. 453. *Glover* v. *Strothoff,* 2 Bro. Ch. 33. *Chandless* v. *Price,* 3 Ves. 99.

*J. Gibson,* of New York, (*C. R. Train* with him,) for Helen S. Brown and Laura H. Brown. 1. The indenture of June 2, 1825, did not execute a trust, but could be revoked or modified by the testator at pleasure. *Harrison* v. *McMennomy,* 2 Edw. Ch. 251. *Godsal* v. *Webb,* 2 Keen, 99. *Beatson* v. *Beatson,* 12 Sim. 281. *Lynn* v. *Ashton,* 1 Rus. & Myl. 188. *Gaskell* v. *Gaskell,* 2 Younge & J. 502. *Buford* v. *McKee,* 1 Dana, 107. *Geary* v. *Page,* 9 Bosw. 290. In the present case there was never any communication to the heirs at law, or those claiming under them, that the testator had made, or ever intended to make, this gift to them, or had created or intended to create a trust for their benefit. The trust was therefore never executed, as there can be no gift without a donor, funds or property as the subject of donation, and a recipient and acceptance. There may be an intention to give; the donor may have property he could give; and there are many, no doubt, ready to accept anything that is to be given. But all these do not severally make an executed gift or create a trust for effectuating a donation. All must concur at one and the same time, not only in purpose and intention, but terminate in final and absolute execution, in order to constitute an executed gift or trust for that purpose. Here, there never existed this concurrence. The testator not only never offered the gift to those claiming, but before the time arrived when they could profit by its reception, and before any communication of the intention to give, he revoked the proposal. They not only never accepted the proposed bounty, but the fact on which an acceptance could have been based was never communicated, and the testator coun-

termanded the direction and gave the fund to others. This change was specially made as to the income of the fund, directed to be paid to his wife during her life, and this change was made over twenty years before his death; thus, *pro tanto*, modifying the trust from and after his death.

MORTON, J. In June, 1825, Nathaniel Curtis and Isaac Clapp, the administrators of Robert Roberts, Senior, describing themselves as trustees of Robert Roberts, deposited with the Massachusetts Hospital Life Insurance Company the sum of one hundred thousand dollars, and received from the company the instrument called an annuity in trust, of which a copy is annexed to the bill. The source from which Curtis and Clapp received this sum is not directly stated in the report, but the only fair inference from the facts stated is, that it was a part of the estate of Robert Roberts, Junior, which came to him by inheritance from his father. For the purposes of this suit, the sum deposited is to be regarded as deposited by Robert Roberts, Junior.

It presents the case of a voluntary conveyance by him to the insurance company as trustees, upon the trusts declared in the instrument delivered by them. The first question arising in this suit is whether such voluntary settlement was revocable by the settler during his life or by his will.

There is much apparent conflict in the numerous decisions upon this subject, but the rule is well settled upon the weight of the authorities, that where the conveyance is fully executed and the trust perfectly created, the settlement cannot be revoked or altered by a second settlement of the same property, in the absence of any provisions giving the settler the power to do so. The decisions in this state are uniform to this effect. In *Hildreth* v. *Eliot*, 8 Pick. 293, the court held that a voluntary settlement fairly made by a woman in contemplation of marriage, could not be set aside by the settler, or by the court upon her application. The same point was decided in *Falk* v. *Turner*, 101 Mass. 494. In *Salisbury* v. *Bigelow*, 20 Pick. 174, Wilde, J., says : " It seems to be a well settled principle of equity, that when a voluntary settlement is fairly made, it cannot be annulled by the settler, unless a power of revocation be reserved for that purpose."

In *Stone* v. *Hackett*, 12 Gray, 227, the settler transferred to a trustee certain shares of stock upon the trusts, that the dividends

were to be paid to him during his lifetime, and at his death the stock to go to certain charitable societies, reserving the power of revoking or modifying the trusts. He did not execute the power to revoke or modify the trusts, and the court upheld the settlement as valid against his widow claiming a distributive share of his estate. In delivering the judgment of the court, Bigelow, J., says: the principle is "now well established and uniformly acted on by courts of chancery, that a voluntary gift or conveyance of property in trust, when fully completed and executed, will be regarded as valid, and its provisions will be enforced and carried into effect against all persons except creditors or *bonâ fide* purchasers without notice. It is certainly true that a court of equity will lend no assistance towards perfecting a voluntary contract or agreement for the creation of a trust, nor regard it as binding so long as it remains executory. But it is equally true that if such an agreement or contract be executed by a conveyance of property in trust, so that nothing remains to be done by the grantor or donor to complete the transfer of title, the relation of trustee and *cestui que trust* is deemed to be established, and the equitable rights and interests arising out of the conveyance, though made without consideration, will be enforced in chancery." The same general rule is recognized in *Sherwood* v. *Andrews*, 2 Allen, 79. In *Viney* v. *Abbott*, 109 Mass. 300, the rule is said to be well established that "a voluntary settlement completely executed, without any circumstances tending to show mental incapacity, mistake, fraud, or undue influence, is binding and will be enforced against the settler and his representatives, and cannot be revoked, except so far as a power of revocation has been reserved in the deed of settlement."

· Though the cases above cited differ in details from the case at bar, yet the principle upon which they turn applies to and is decisive of it.

The plaintiff's testator, through the administrators of his father, voluntarily transferred his property to the Life Insurance Company, who received it and for many years managed it, upon the trusts declared in the "annuity of trust." The conveyance was completed and executed, the trust was fully created. The legal title to the property vested in the trustees, and the settler parted with all his power and dominion over it. The declaration ·

of trust contains no power of revoking the trusts, but on the contrary provides that the "annuity and principal sum are both hereby declared to be inalienable by the respective grantees thereof, and not subject to their debts or control." It was a voluntary settlement fully completed and executed, and could not be revoked by the settler. *Ellison* v. *Ellison*, 6 Ves. 656. *Kekewich* v. *Manning*, 1 De G., M. & G. 176. It follows that the new settlement made on July 17, 1855, was invalid, that the will of Robert Roberts, Junior, is inoperative so far as it affects the fund in controversy, and that such fund must be distributed according to the provisions of the original settlement.

The property was held by the insurance company upon the trusts to pay the annuity or interest provided for in the declaration to the settler during his life, and upon his death to transfer the principal sum to his executors or administrators, " in trust for the special use and benefit of any child or children of said Robert Roberts ; if one only, in trust for his or her use and benefit ; if more than one, for their use and benefit equally, the legal representatives to take their parent's share ; and in case the said Robert Roberts shall die without leaving any issue, then at his decease to pay said principal sum to his mother, Eliza Roberts, for her own use ; but in case the said Robert Roberts shall die without leaving any lawful issue, and his said mother shall die before him, then at his decease to pay said principal sum to his executors or administrators in trust for the use of his heirs at law and the heirs at law of his said mother, equally to be divided between them."

It is argued that this language, if applied to real estate, would create an estate tail, and that its effect applied to personal estate is to give the settler an absolute property, and thus to render the fund subject to his control. But such a construction is clearly contrary to the intention of the parties, and would wholly defeat the purposes of the settlement. The fund is declared to be inalienable by the settler ; the Life Insurance Company did not hold it as a mere agent, but during his life had a power coupled with an interest, and the whole scheme of the settlement shows that Roberts was to have merely an equitable life estate, and not an interest which would enable him at any time to terminate the trust and defeat the settlement. It is not like the case cited of

*Albee* v. *Carpenter*, 12 Cush. 382, where a bequest of personal property was made to one and her heirs, and if she die without issue, then a gift over. Here the gift is to Roberts for his life only, with a gift over to his children or issue, who take by purchase and not by limitation.

Robert Roberts died in 1872, his mother having died before him. He never had any issue born of his body, but in 1865 he adopted Ada Parker, who survived him, and is one of the respondents.

It is contended that this adoption was not legal and valid. The Probate Court, in due form, upon the petition of said Roberts and his wife, passed a decree permitting them to adopt the child, being under the age of fourteen years. She had no parents living, and her next of kin were her grandparents, who lived in New Hampshire. The said Roberts had been previously duly appointed guardian of the child, with the written consent of her next of kin. As such guardian he consented in writing to the adoption. It is objected that the decree is void because it does not appear that notice was given to the next of kin, or that a guardian *ad litem* was appointed to represent the child.

The statute provides that " The parents of the child, or the survivor of them, shall, except as herein provided, consent in writing to such adoption. If neither parent is living, the guardian of the child, or if there is no guardian, the next of kin in this State, may give such consent ; or if there is no next of kin, the court may appoint some suitable person to act in the proceedings as next friend of the child, and to give or withhold such consent." Gen. Sts. *c.* 110, § 2.

The fourth section provides that a notice of the petition shall be published in a newspaper in the county, " when a child has no parent living, and no guardian nor next of kin in this State." No further provision is made for a case like the present, of a petition by a guardian for the adoption of his ward. There was a literal compliance with the statute, and the only question is whether the court should, upon general principles, have appointed a guardian *ad litem* for the infant.

The court had jurisdiction of the subject matter and of the parties ; and if it be conceded that in such case it should appoint a guardian *ad litem*, the failure to do so would not render its de-

cree absolutely void.   It would at most be an irregularity which might render it voidable by the infant at her election.   *Austin* v. *Charlestown Female Seminary*, 8 Met. 196.   *Hill* v. *Keyes*, 10 Allen, 258.

It was clearly for her benefit, and a stranger cannot avoid it to her injury.   We are of opinion, therefore, that the adoption was valid, and the next inquiry is, what are the rights of the adopted daughter under her father's settlement.

The statute provides that " A child so adopted shall be deemed, for the purposes of inheritance by such child and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock ; except that he shall not be capable of taking property expressly limited to the heirs of the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation."   Gen. Sts. *c.* 110, § 7.*   This language is very broad and comprehensive, and it was manifestly the intention of the legislature to provide that, with the exceptions named, the adopted child should, in the words of the sixth section, " to all legal intents and purposes be the child of the petitioner."

The adopted child, in this case, therefore, in construing her father's settlement, must be regarded in the light of a child born in lawful wedlock, unless the property disposed of by the settlement falls within one of the exceptions.   It is true that if she takes under the settlement, the property does not come to her by inheritance, but it comes to her as one of the legal consequences and incidents of the natural relation of parents and children. Does it fall within either exception of the statute ?   It cannot be claimed that it falls within the last exception as property from the kindred of the parents by right of representation.

The other exception is that she cannot take property " expressly limited to the heirs of the body or bodies of the parents by adoption."   The term " heir of the body " is a well established technical term, with which the words " children " or " issue " or " lawful issue " are not synonymous.   The rule of construction

---

* In 1871, the sections of *c.* 110 of the Gen. Sts. relating to adoption were repealed; but the provisions of the sections cited were substantially reënacted St. 1871, *c.* 310.

enjoined by our statutes is, that technical words or phrases which have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning, unless it is inconsistent with the manifest intent of the legislature or repugnant to the context.  Gen. Sts. *c.* 3, § 7.

The language of the statute shows that the legislature intended to use the phrase " heirs of the body or bodies " in its primary technical sense.  The terms of the settlement, above cited, do not limit the estate expressly " to the heirs of the body " of Roberts ; and the terms therein used, " child or children," " issue " and " lawful issue," are not equivalent terms, and do not lead to the same construction and legal result as would be reached if the estate was in direct words limited to the heirs of his body.  We are therefore of opinion that the case does not fall within either of the exceptions of the statute, and that, as to the property in question, Ada Parker Roberts is to be deemed the child of Robert Roberts, the same as if she had been born to him in lawful wedlock.  It follows that, in the contingency which has happened, she is as such child entitled to the whole of the principal fund.

It is argued that this statute is unconstitutional, as applied to a settlement made before its passage, because it takes property from one person and gives it to another.  But until the death of the settler it was uncertain what persons would take under the settlement, and no title ever vested in those who are now claiming as his heirs or the heirs of his mother against his adopted daughter.  The statute is an important one, general in its application, and passed by the legislature as the guardian of the public interests, and is to be upheld unless it clearly exceeds their powers.  Much more extensive powers have been exercised without question, in the enactment of statutes affecting tenures and the interests of persons unborn or having remote expectations. Such was the St. of 1791, *c.* 61, giving to tenants in tail the power to bar by deed the issue in tail, and the St. of 1804, *c.* 59, providing a method for barring remainders and reversions expectant on estates tail, and the St. of 1851, *c.* 14, § 1, for the barring of equitable estates tail.  *Clark* v. *Cordis*, 4 Allen, 466.

An instance more nearly like the statute we are considering is found in the provisions first enacted in the Revision of 1836

that an illegitimate child, if his parents intermarry and his father acknowledges him, shall be considered as legitimate to all intents and purposes. Rev. Sts. *c.* 61, § 4. St. 1853, *c.* 253. And in *Loring* v. *Thorndike*, 5 Allen, 257, it was held that this statute gave to an illegitimate child the same rights which a child born in lawful wedlock would have, under a will proved before the statute was passed.

The fact that the statute, as one of its incidental effects, changes the descent and devolution of property, does not render it invalid unless it defeats vested rights. As we have seen, in the contingency which has happened in this case, no right adverse to the adopted daughter had vested in the heirs who now claim, and therefore none have been defeated or impaired.

It is also argued that the result we have reached is opposed to the intention of the settler. But, as is often the case in deeds or wills providing for a remote future, he could have had no intentions as to the particular person who was to take. His general intention was that the property should go in the first instance to his children as a class. Whoever at his death fell within this class was within this general intention, and as his adopted daughter is by law his child, she belongs to the class intended to take, and her rights cannot be defeated upon the assumption that he did not intend her to take.

The views we have taken render immaterial the other questions argued at the bar. The result of the whole case is that Ada Parker Roberts, as the only child of Robert Roberts, the settler, is entitled to receive the whole of the principal of the trust fund.                                        *Decree accordingly.*