[Sac. No. 1136.   Department Two.—December 23, 1903.]

In the Matter of the Estate of CORA V. McKEAG, Deceased. FRANCIS SMITH MOXLEY, Appellant, v. CHARLES J. TEASS et al., Respondents.

ESTATES OF DECEASED PERSONS—LETTERS OF ADMINISTRATION—RIGHTS OF ADOPTED DAUGHTER.—An adopted daughter of a deceased person who is sole heir to the decedent is entitled to administer upon the estate, and letters of administration were properly granted to her husband upon her request.

---

[1] 5 Am. St. Rep. 448, and note.

ID.—VALIDITY OF PROCEEDINGS FOR ADOPTION—COLLATERAL ATTACK—
CONSENT OF PARENTS—APPEARANCE AT HEARING—RECITAL IN OR-
DER—PRESUMPTION.—Where the written consent of the daughter
and of her father and mother to the adoption were filed, and the
adopting parents applied for the order of adoption, and filed their
written agreement of adoption, and the adopting order recited
that the petitioners and said minor child, "and all persons whose
consent is necessary have appeared herein as required by law," the
order must be deemed sufficient, upon collateral attack thereupon,
and it must be presumed upon such attack that the court did its
duty, and found from extrinsic evidence the existence of all juris-
dictional facts, and determined whether the presence of the parents
of the minor at the hearing was necessary or not, and, in the ab-
sence of any finding that it was not necessary, that the court found
that the presence of the father was necessary, and required his
appearance at the hearing; and the fact of such appearance suffi-
ciently appears upon the face of the order, as against the collateral
attack.

ID.—POLICY OF ADOPTION LAWS—REASONABLE CONSTRUCTION TO SUS-
TAIN PROCEEDINGS.—The policy of adoption laws is to be regarded
with favor. Although the proceedings under the statute are not
strictly judicial, they call for the exercise of judicial functions;
and such a reasonable construction should be given them as will
sustain rather than defeat the object they have in view, and will
sustain the assumed relationship, particularly as against a collateral
attack by strangers to the proceedings, whose only interest is to
defeat the relations which the adoptive parents always recognized
and never questioned, so that they may succeed to an estate from
which, by the very fact of adoption, the adoptive parents in-
tended they should be excluded in favor of the adopted child.

ID.—JURISDICTION OF PROCEEDING—EXAMINATION IN COURT—ERROR OF
PROCEDURE.—The court in which the adoption proceedings were
had having obtained jurisdiction of the parties, the failure of the
judge to examine them at the hearing was an error of procedure
which cannot affect the validity of the adoption.

ID.—ESTOPPEL OF HEIR CLAIMING UNDER ADOPTIVE MOTHER.—The adopt-
ive mother was estopped in her lifetime from questioning the
validity of the adoption proceedings as respects mere irregularities
in the method of procedure; and an heir claiming under the adopt-
ive mother, as against the adopted daughter, stands in no better
right to attack them than the deceased would have had.

APPEAL from an order of the Superior Court of Shasta
County refusing to revoke letters of administration. Ed-
ward Sweeny, Judge.

The facts are stated in the opinion of the court.

W. M. Cannon, and Frank Freeman, for Appellant.

McCoy & Gans, for Respondents.

LORIGAN, J.—This is an appeal from an order of the superior court of Shasta County, refusing to revoke letters of administration in the above estate, and the real point involved is as to the validity of certain adoption proceedings.

The respondent Charles J. Teass is the husband of Helen McKeag-Teass, and was appointed administrator of said estate upon the request of his wife, who claimed to be the adopted daughter, and, as such, sole heir of deceased. At the time of the alleged adoption, Mrs. Teass, then Helen Skeels, was a minor, over the age of twelve years, and the daughter of Spencer L. and Anna E. Skeels.

On December 2, 1895, William McKeag and the deceased, Cora V. McKeag, his wife, jointly applied to the judge of the superior court of Shasta County for an order of adoption by them of said child, and filed therewith their written agreement of adoption required by law. The written consent of said minor was likewise filed, together with that of her father and mother consenting to and authorizing the making of such order of adoption.

Thereafter the judge of said superior court made and filed an order for the adoption by said William and Cora V. Mc-Keag of said minor, which order recited, among other things: "That the petitioners and said minor child, and all persons whose consent is necessary, have appeared herein as provided by law, and . . . it is hereby ordered that said petitioners William McKeag and Cora V. McKeag, his wife, adopt said minor child . . . and said minor child shall be treated by them in all respects as their own lawful child should be treated, including the right of inheritance, . . . and shall bear to each other and toward each other the relation and relations of parents . . . and child."

Prior to said adoption, said minor had, for some six or seven years, been living with said William and Cora McKeag, and after said adoption continued to live with them until their death—William McKeag dying a couple of years before his wife. William and Cora V. McKeag had no other chil-

dren, and a strong feeling of parental love and affection existed at all times between the adoptive parents and said child, and so continued to the death of the former.

Said Cora V. McKeag died intestate in Shasta County in July, 1901, and after the issuance of letters of administration to said respondent, the appellant, a sister of said deceased, claiming to be one of the heirs at law, petitioned to have the letters issued to respondent revoked, and letters issued to herself, which petition was denied.

Upon the hearing in the lower court, the validity of the adoption proceedings was the sole point in issue, as it is the sole question for determination here.

The appellant claims,—1. That the judge before whom the adoption proceedings were had, acquired no jurisdiction to make the order of adoption, because the father of the minor child did not appear personally before him during any part of the proceedings; and 2. That neither the adopting parents nor the father of the minor, nor the minor herself, were examined by the judge on the hearing, either separately, or at all.

Upon the first point it is insisted that it is not enough for the adoption proceedings to show that the father con- sented in writing to the adoption of his child, but that the order of adoption should affirmatively show that he was ac- tually present at the hearing upon the petition. We think, however, on this collateral attack, that the fact does suffi- ciently appear upon the face of the order from the recital therein "that the petitioner and said minor child, *and all persons whose consent is necessary,* have appeared herein as provided by law."

In the *Estate of Camp,* 131 Cal. 470,[1] it is said: "While the proceedings for the adoption of a minor child do not con- stitute judicial proceedings, and the order of the judge therein is not the judgment of a court, yet under section 227 of the Civil Code, the judge of the superior court has been desig- nated as a tribunal for that purpose, and in the performance of his duties thereunder exercises judicial functions. It is a well-settled rule that when the jurisdiction of an inferior or special tribunal, or its power to act in any particular

[1] 82 Am. St. Rep. 371.

case, depends upon the existence of a fact which is to be established before it by extrinsic evidence, the determination of that fact by the tribunal cannot be questioned in a collateral attack upon its order. . . . Whether the children had been abandoned by their parents was a jurisdictional fact to be determined by the judge upon the evidence presented to him before he was authorized to entertain the petition for their adoption, and the recital in his order that it appeared to his satisfaction that they had been abandoned by their parents was a determination of this fact which cannot be questioned in a collateral attack upon the order. Otherwise, the existence of this fact and the *status* of the children would be always uncertain, since the evidence might not be the same at all investigations, and might be regarded with different effect by different tribunals, and the adoption be held by one court to have been valid, while another court would hold it to have been of no avail. Whether the parents of the child, in a direct proceeding against the adopting person for the recovery of the persons of the children, would be bound by the determination of the judge, is not involved herein."

So, in the case at bar, it was a jurisdictional fact, to be determined by the judge from extrinsic evidence, whether the consent of the father was necessary to the adoption, and, if so, to require his presence before him at the hearing. While the general rule is, that a child cannot be adopted without the consent of its parents, there are several exceptions to the rule; as, for instance, if either parent has been deprived of civil rights, or adjudged guilty of cruelty or adultery, and for that reason divorced, or adjudged an habitual drunkard, or has abandoned the child. In any of these cases the consent or presence of such parent is unnecessary. Otherwise it is. Upon the appearance before the judge of the persons seeking to adopt the child and the child, he acquires jurisdiction to entertain the petition for adoption, but at this point it is only jurisdiction to preliminarily investigate and determine whether the presence at the hearing of the parents of the minor child is necessary or not.

One parent being present and consenting, it is still incumbent upon the judge to ascertain whether the consent and presence of that parent alone is necessary to the re-

linquishment of the child, and to confer full jurisdiction to proceed with the hearing and make the order of adoption.

If it should be ascertained upon such inquiry that the child has another parent living who possesses a right to its care, custody, or control, it is the duty of the judge to decline to proceed with the hearing on the petition until the consent and presence of such parent are had; on the other hand, should the inquiry disclose that such parent, if living, comes within any of the exceptions of the statute, the consent or presence of such parent is unnecessary. In all cases it becomes necessary to determine this jurisdictional fact. In the case at bar it must be presumed that the judge properly discharged his official duty, and, in the absence of any express finding that the presence of the father was unnecessary, by reason of coming within any of the exceptions (and the presumption is in favor of the general rule, not of the exception), determined that his presence was necessary, and required it, and in harmony with his written consent the father actually appeared at the hearing, and that the fact of such actual presence is embraced in the finding ''That all persons whose consent is necessary have appeared herein as provided by law.''

The finding, it is true, is somewhat open to the objection that it is equivocal and uncertain in its language. It might have been more definite. In fact, in the various cases affecting adoption proceedings which have required the attention of this court, much of the difficulty in considering them has arisen from the apparent inattention to the plain provisions of the statute; these provisions are so simple, and so much depends upon substantial compliance with them, particularly as to the future interests of the child, that the simplicity of the one and the paramount interest of the other should command more attention at the hands of the judge called upon to act. While proceedings under the statute are not strictly judicial, they call for the exercise by the judge of judicial functions, and in construing them such a reasonable construction should be given them as will sustain rather than defeat the object they have in view.

There is nothing that can be said against the policy of adoption laws; there is everything that can be said in their

favor. Under them, innocent parentless and abandoned children are withdrawn from the charity of public institutions, and provided with comfortable homes and affectionate foster parents.

Unfortunate children, whose parents, through overwhelming adversity, or the infirmities of their nature, are unable to care and provide for them, are placed in cheerful homes, under the care and control of adoptive parents willing and able to provide for their protection and comfort.

Under the beneficent provisions of these statutes, such children are accorded advantages and opportunities for better moral, intellectual, and material advancement; a measure of happiness is secured to the adoptive parents and the child adopted, under the reciprocal influences of filial and parental affection, and inasmuch as the development of the child into a valuable member of society and an upright citizen depends upon healthy, moral home influences and parental solicitude, to that all-important extent, then, under these laws, are the best interests of society and the state conserved.

Recognizing these good results, courts are more and more inclined to an abandonment of the old rule of strict construction and to place a fair and reasonable construction upon proceedings under the statute, with a view of sustaining the assumed relationship, particularly against a collateral attack by strangers to the proceedings, whose only interest is to defeat the relations which the adoptive parents always recognized and never questioned, so that they may succeed to an estate from which, by the very fact of adoption, the adoptive parents intended they should be excluded in favor of the adopted child.

As to the second point urged by counsel for appellant, that neither the adoptive parents, nor the father of the minor, nor the minor, were examined at the hearing, we think it is without merit.

The court, having obtained jurisdiction of the parties, the failure of the judge to examine these parties was an error of procedure which cannot affect the validity of the adoption. (*In re Johnson,* 98 Cal. 542.) While it was especially held that the examination of a child under twelve years of age was discretionary with the judge, the trend of the decision

is to hold that the examination of the other persons appearing before the judge is not absolutely necessary to give effect to the order of adoption. The court there says: "The essential foundation of the proceeding is the consent of the persons named in the statute, and when this has been given in the presence of the proper judge, and manifested in writing and by the order of such judge, the contract cannot be declared invalid because of some merely technical objection to the manner in which the judge who signed the order of adoption may have discharged his duty in the premises."

Without, however, discussing this point further, we are satisfied that appellant claiming under Cora V. McKeag, the adoptive mother, is estopped as effectually as she would be in her lifetime from questioning the validity of the adoption proceedings—certainly, at least, to the extent that any irregularities in the method of procedure are invoked to disturb them. The deceased in her lifetime could not have questioned them, and appellant stands in no better right to attack them than the deceased would have had.

In *In re Williams*, 102 Cal. 81,[1] this court says: "Undoubtedly, the judge ought, in the orderly and proper discharge of his duty, to conform to this direction of the law (examination of all parties), but his omission to do so would not render the contract absolutely void. The deceased voluntarily entered into the contract of adoption under consideration here, and received in his lifetime the benefits resulting from the relation thus created—the society, affection, and devotion of an adopted daughter—and no principle of law or equity will permit the appellants claiming under him to avail themselves of this technical departure from the direction of the statute, to defeat the rights of respondent growing out of the contract, the validity of which was never disputed by the deceased, and which has been fully performed by all the parties to it."

In *In re Evans*, 106 Cal. 565, the court expresses the same view in the following language: "Various irregularities in the proceedings are urged, but, after these papers were executed before the judge, and this man and this child lived together as father and daughter for ten years and down to

[1] 41 Am. St. Rep. 163.

the day of his death, it requires more than mere irregulari-
ties to brush aside and annul a relationship entered into with
all honesty of purpose, lived up to for many years, and only
severed by the hand of death.'' To the same effect are *In re
Johnson*, 98 Cal. 545; *Estate of Camp*, 131 Cal. 471;[1] Van
Fleet on Collateral Attack, sec. 408; *Sewall* v. *Robert*, 115
Mass. 276; *Parsons* v. *Parsons*, 101 Wis. 83;[2] *Van Matre* v.
*Sankey*, 148 Mass. 536;[3] *Nugent* v. *Powell*, 4 Wyo. 201;[4]
and *Appeal of Wolf*, 13 Atl. Rep. 764.

In *Nugent* v. *Powell*, 4 Wyo. 201,[4] it is said: ''Notwith-
standing these proceedings in adoption, the father might at
any time since they took place have brought an action for the
possession or custody of the child, and no one will contend,
or perhaps can successfully contend, that in such case these
adoption proceedings would constitute a bar to the father's
action, or that they were conclusive upon him. But it does
not follow that because the adoption proceedings were not
conclusive upon the .father, they were not conclusive upon
the parties to the proceedings and their privies; on the con-
trary, we think they are, and so hold.''

In the last case above cited—*Appeal of Wolf*—the doc-
trine is clearly stated as follows, and we set it forth
somewhat at length as directly applicable to the case at
bar: ''Nearly nine years after the decree was entered,
and more than one year after the death of her adopted
father, his administrator and collateral heirs come into,
court and ask that this decree of adoption be vacated. They
are not here in the interest or on behalf of the inno-
cent subject of adoption, but decidedly against the same.
They are either strangers to the adoption, and, therefore, have
no standing in court, or they are privies in blood, or in law,
and stand in the shoes of Samuel Sankey, through and under
whom they claim. Surely, Samuel Sankey, if living, could
not be heard in this court questioning its decree made at his
solicitation. He invoked the jurisdiction of the court; he
asked that the decree of adoption should be made; he got
what he desired; and he should not now be allowed to ques-
tion the means he set in motion. If any wrong was done,

[1] 82 Am. St. Rep. 371.          [3] 39. Am. St. Rep. 196.
[2] 70 Am. St. Rep. 894.          [4] 62 Am. St. Rep. 17.

Samuel Sankey did it, and neither he nor those who claim under him can be permitted to take advantage of his wrong to the prejudice of an innocent party. On the argument many cases are cited where decrees of distribution have been set aside at the instance or in the interest of the adopted child. But none were cited, nor will any likely ever be found, where such decrees were revoked at the instance of the party who invoked the power of the court and sought and obtained the decree, when such revocation would be to the prejudice of the innocent child."

For the reasons that we have given, and in harmony with the authorities cited, we are satisfied that the finding of the lower court that the adoption proceedings were valid is correct, and that the respondent, as nominee of his wife, the adopted daughter of deceased, was entitled to administer upon the estate, and that the order denying the application of appellant for a revocation of his letters should be, and is, affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.