JOHN MILLIGAN ET AL., APPELLEES, V. WILSON MC-
LAUGHLIN; CLARENCE BROTHER MCLAUGHLIN, INTER-
VENER, APPELLANT.

FILED JUNE 26, 1913. No. 17,272.

Parent and Child: ADOPTION: PROCEEDINGS: VALIDITY: ESTOPPEL.
While, under the provisions of section 800 of the code, a person desiring to adopt a child should file the petition for adoption in the county of his residence, and the county court of another county should refuse to receive and file the same, yet, the statute being enacted for the benefit of the child, in a case where the facts are that all the interested parties appeared before the

county court of another county, and agreed, on the one side, to relinquish the child, and consented to its adoption on condition that it should have the full rights of heirship as if born in wedlock, and, on the other, to adopt and make it an heir, and the child is surrendered to the custody of, and remains in the family of. the adopting parent until the death of that parent, which occurred while the child was of tender years, the collateral heirs of the deceased adopting parent are estopped to deny the validity of the adoption proceedings and that the child is entitled to inherit.

APPEAL from the district court for Logan county: HANSON M. GRIMES, JUDGE. *Reversed.*

*Wilcox & Halligan* and *J. G. Mothersead,* for appellant.

*Warren Pratt, contra.*

LETTON, J.

This was an action in partition. A question of title arose in the case, the solution of which depends upon whether or not certain proceedings seeking to adopt Clarence Brother McLaughlin in the county court of Custer county were valid and effectual, or, if ineffectual, whether there was a contract of adoption which will be specifically enforced. The record shows that on October 3, 1906, Mary McLaughlin filed a petition in the county court of Custer county setting forth that "she resides in Logan county, Nebraska," and that Clarence Brother McLaughlin "is a minor male child under the age of 14 years, to wit, of the age of two years on the 23d day of April next; that they do hereby declare that they (and each of us) do freely and voluntarily adopt said child as their own, upon the terms and conditions following, to wit: They intend hereby to make it an heir of themselves with the right to inherit from them the same as it might do if it was their own child, and that they do hereby bestow upon said minor child equal rights, privileges, and immunities of children born to us (or either of us) in lawful wedlock." The prayer was in the usual form. The petition was signed and sworn to by

Mary McLaughlin alone. On the same day Martin Mc-
Laughlin and Eva McLaughlin, the parents of the child,
filed their signed relinquishment and consent to the adop-
tion, setting forth therein that they and the child reside
in Custer county, Nebraska; that they are the parents of
the child; "that Mary McLaughlin, residing at Arnold, in
the county of Logan, state of Nebraska, desires to adopt
said child, * * * granting to said minor child * * *
full heirship with all the rights of a child born in lawful
wedlock;" and relinquished their right to the custody of
the child and right to its services, "to the end that said
child shall be fully adopted by the said Mary McLaughlin,
upon the terms and conditions above set out; and we hereby
fully consent to such adoption. And each party waives the
issuance and service of notice and asks that the cause be
immediately heard and determined." The record of the
county court recites that on the same day the matter came
on for hearing, "the said petitioners and the said minor
child being present in court in person, and also Martin
McLaughlin and Eva McLaughlin, parents of said minor
child, whose consent is filed." The court then finds that
the statements of the petition are true, that Mary Mc-
Laughlin is a proper and suitable person to adopt the
child, and that it is for the best interest of the child that
it should be so adopted. A decree was then entered in con-
formity with these findings.

Mary McLaughlin was the wife of Wilson McLaughlin.
She died intestate in Logan county on the 11th day of
March, 1908, leaving no children born of her body. The
family home of Wilson and Mary McLaughlin was, at all
times material to this controversy, in Logan county, and
they never lived in Custer county. Martin, the father of
the child, at this time was living in Logan county, and
working for his brother, Wilson McLaughlin. Eva Mc-
Laughlin, his wife, the mother of the child, was a resident
of Custer county, and the child was with his mother. All
the parties interested were present in court at the hearing.
It is also shown that Wilson McLaughlin consented to

the adoption, paid for making out the papers, intended to sign and offered to sign the petition for adoption while before the court, but that his counsel said it was unnecessary for him to do so. After these proceedings the child was taken to the home in Logan county, and lived in the family until the death of Mary McLaughlin, and to the time of the trial of this case in district court.

In this action brothers and sisters of Mary McLaughlin are claiming the land as her heirs. The guardian *ad litem* of Clarence Brother McLaughlin intervened and filed a petition claiming an interest in the land for him as the adopted son of Mary McLaughlin. He also set up a contract for his adoption and to make him her heir, and asked that, if the court found the adoption proceedings were invalid, such contract should be specifically enforced, and the boy decreed to have the same interest in the property as if he had been the natural heir of Mary McLaughlin. The district court held that the adoption proceedings were void, and that the county court of Custer county was without jurisdiction. It also refused to specifically enforce the alleged contract, and quieted the title of plaintiffs.

The provisions of the code affecting the determination of the questions presented are section 798: "A married man, not lawfully separated from his wife, cannot adopt a minor child without the consent of his wife; nor can a married woman, not thus separated from her husband, without his consent: Provided, the husband or wife, not consenting, is capable of giving such consent." Section 800: "Any person or persons desiring to adopt a minor child shall file in the county court of the county where the person desiring to adopt said child resides a petition stating that he freely and voluntarily adopts said minor child, which petition shall be signed and sworn to by the person so desiring to adopt. Said petition may state the terms and conditions on which said adoption is desired to be made."

The plaintiffs contend that the adoption proceedings are void for the reasons: (1) That no formal consent of

Wilson McLaughlin was given to the adoption of the child by his wife; (2) that Mrs. McLaughlin was not a resident of Custer county.

Appellant urges that the consent of Wilson McLaughlin is sufficiently shown by the record and by facts in evidence; and that the appearance of the adopting parents with all the other interested parties was sufficient to confer jurisdiction upon the county court of Custer county. Appellant also contends that the provision of the statute conferring jurisdiction upon the county court where the person desiring to adopt the child resides is directory only. He argues that, though an ordinary civil action must be brought in the county in which the defendant resides or may be summoned, if he enters a voluntary appearance in an action brought in another county, the court of that county would acquire jurisdiction; and, further, that in any event Mary McLaughlin was at least a temporary resident of Custer county, and this is all that is required. He further has pleaded a full performance on the part of the surrendering parents and the child, of the contract of adoption and to make the child the heir of Mary McLaughlin, and maintains that the collateral heirs may not deny the validity of the adoption proceedings or the right of the child to take as an heir.

An examination of cases in other states shows that there are two classes of decisions upon such questions: One based upon the view that, since statutes of adoption were unknown at common law, the powers conferred upon probate or county courts are of such a limited and special nature that all proceedings must be strictly construed, no presumptions will be indulged in, that nothing can be shown outside of the record to supply omissions therein, and that the statutory requirements must be strictly followed in all respects in order to confer jurisdiction. The other class, while adhering to the view that statutory requirements as to jurisdiction must be complied with, take a more liberal view, and hold that in the exercise of the jurisdiction conferred upon them in adoption proceedings

they are courts of general jurisdiction in that regard, and the same presumption with respect to the regularity of their proceedings apply as in other courts. Under the doctrine announced by this court in *Ferguson v. Herr*, 64 Neb. 659, the latter principle of construction has been adopted in this state, and the decree of a probate court in adoption proceedings "has all the force and effect of a judgment, being subject to collateral attack only for want of jurisdiction."

No written consent to the adoption of the child by his wife was signed by Wilson McLaughlin, but he was present in court at the hearing on the petition, and made no attempt to oppose or contest the granting of the same. The statute does not require the consent of the husband to be in writing. Considering the whole record, the petition, the recital of the proceedings, the findings and the decree, and construing them together in connection with the presumptions of regularity, we think it is sufficiently established that the consent of the husband was granted at the time of the adoption proceedings. *Estate of McKeag*, 141 Cal. 403, 74 Pac. 1039; *Bland v. Gollaher*, 48 S. W. (Tenn.) 320.

Were the proceedings absolutely void and subject to attack by any one for the reason that Custer county was not the county in which the petitioner resided? One of the leading cases on this question is *Appeal of Wolf*, 13 Atl. (Pa.) 760. The Pennsylvania statute of adoption is similar to that of Nebraska in the respect that the petition must be presented to a court "in the county where he or she may be resident." A petition was filed by a person who alleged he was a resident of California, and "is now a temporary resident of the county in which the proceedings were had." Upon the objection that the court acquired no jurisdiction, it was held that the word "resident" included both a permanent and a temporary resident, and that the petition was sufficient to confer jurisdiction. As we shall see later, the proceedings were also upheld on other grounds. See, also, *Van Matre v. Sankey*, 148 Ill. 536, involving the validity of the same adoption proceedings.

In other states, however, adhering to the strict construction rule, residence in the county is held to be a jurisdictional fact. The question is discussed at length in a monographic note to *Van Matre v. Sankey,* 39 Am. St. Rep. 210 (148 Ill. 536). The absurdity of applying the rule of strict construction to a code which expressly provides that the common law rule of strict construction shall not apply to its provisions is pointed out, and it is said: "The statutes frequently require the child to be adopted and the persons adopting it, or both, to be residents of the county where the proceeding takes place. It is doubtful whether the want of such residence, as a matter of fact, is such an irregularity as to avoid the proceedings. So far as the order or other writing is concerned, any statement therein from which it can be reasonably inferred that the parties are residents of the county is sufficient, and, if the adopting parent should falsely state himself to be a resident, both he and his personal representative will be estopped from controverting the statement for the purpose of annulling the adoption. *Estate of Williams,* 102 Cal. 70; *People v. Bloedel,* 16 N. Y. Supp. 837; *Abney v. De Loach,* 84 Ala. 393." In the same note (p. 219) we find the following on the question of estoppel: "If a person resorts to a court for the purpose of obtaining, and does there obtain, a decree or judgment, though it is void as against his adversary, yet if the latter accepts and acts upon it, he at whose instance it is obtained is estopped from asserting its invalidity for the purpose of seeking some advantage to himself, or of subjecting the innocent party to some loss or punishment. * * * If the adopting parent conducts such proceedings, and procures an order or agreement of adoption, and takes the child into his family, where it assumes the place and duties of his child, we think the courts will not permit him to subsequently urge that his proceedings were void. Nor, indeed, up to the present time has any adopting parent ever undertaken to do so, but in several cases, after his death, persons connected with him by ties of consanguinity have tried to

claim his estate and incidentally to assert that the order of adoption procured and respected by him was void."

It seems apparent that the object of the statute permitting a person desiring to adopt a child to present his petition to the county court of his residence is primarily for the benefit of the child, so that if in after years his right to inherit should be questioned he would be furnished a record within the county of his adoptive parent's residence to which he might readily refer to ascertain his status and what his rights of heirship by adoption were. The evil to be guarded against was apparently the contingency of an adoption being made in one county, the residence of the adopting parents of the child being in another state or county perhaps hundreds or thousands of miles removed. In such case, if the adopted child were ignorant of the facts, he might be deprived of his lawful inheritance for want of the record evidence necessary to substantiate his claim. Taking this view of the statute, we think it was not designed to be used as a sword to cut down the rights of the child, but its intention was beneficent, and its purpose was to protect him against other claimants by furnishing him accessible proof of his adoption. In this case, all the parties appeared before the county court of Custer county; the parents relinquished the child, and Mrs. McLaughlin adopted it as her heir in as solemn a manner as she could do so. She took the care and custody of the child, took it to her home in Logan county, and treated and considered it as her own until the time of her death. During her lifetime she made no attempt to repudiate the obligation which she had entered into, but ratified and confirmed the contract of adoption. The surrendering parents performed to the full extent on their part, and are interposing no objections to the adoption proceedings and no claim to the child. We think no court would, under the facts before us, have permitted Mrs. McLaughlin during her lifetime to deny that the child in her possession had been adopted and had the rights of a lawful heir, and her collateral heirs are equally estopped. As was said in

*Appeal of Wolf, supra:* "They are not here in the interest nor on behalf of the innocent subject of adoption, but decidedly against the same. They are either strangers to the adoption proceedings, and therefore have no standing in court, or they are privies in blood or in law, and stand in the shoes of Samuel Sankey, through and under whom they claim." It is also said in the opinion that many cases were cited where decrees had been set aside for or in the interest of the adopted child, but none were cited where such decrees were revoked where the revocation would be against the innocent child. See, also, *Estate of Williams,* and *Estate of McKeag, supra.* Even if the county court of Custer county had not acquired jurisdiction, we think the facts proved as to what occurred at the time all parties met in the county court are sufficient to justify a holding that the child is entitled to the specific performance of the agreement to make him the heir of Mary McLaughlin, under the rules laid down in *Kofka v. Rosicky,* 41 Neb. 328; *Pemberton v. Heirs of Pemberton,* 76 Neb. 669; *Peterson v. Bauer,* 83 Neb. 405; *Hespin v. Wendeln,* 85 Neb. 172; *Johnson v. Riseberg,* 90 Neb. 217. The same view is taken in Iowa and in some other states. Note to *Chehak v. Battles,* 8 L. R. A. n. s. 1130 (133 Ia. 107), and cases cited in note.

Controversies over the validity of adoption proceedings are not infrequent. It is to be regretted that where the statutes are so plain, the requirements so simple, and the consequences may be so momentous, more care is not exercised by the county courts, and more attention paid to detail by counsel. Though we are of the opinion that the county court of another county than that in which the adopting parents reside should refuse to receive and file a petition for adoption, under the facts in this case we are of opinion that the collateral heirs of Mrs. McLaughlin are estopped to deny the validity of the adoption proceedings; that the proceedings taken on the day of the hearing, the relinquishment upon conditions, and the delivery of the child, together with the other facts in evidence, con-

stituted a completed contract for adoption and heirship, and that the intervener is entitled to inherit as the heir of Mary McLaughlin.

The judgment of the district court is therefore

REVERSED.

BARNES, FAWCETT and HAMER, JJ., not sitting.