BREAUX, C. J.
Plaintiff and defendant agree with the statement that the assessment of plaintiff’s property was made in accordance with Act 170 of 1908.
The International Text-Book Company brought suit against the board of assessors to set aside as illegal and void the assessment of plaintiff’s property for 1912 and enjoin the State Tax ’Collector and city treasurer from collecting taxes on values the situs of which plaintiff alleges is at its domicile.
The assessment, amounting to $2,500, consists of money loaned on interest and credits of every description. The taxes on this sum is the only amount in controversy.
The judge of the district court annulled the assessment.
Defendants have appealed.
Plaintiff seeks scholarships for the plaintiff institution. The agent here testified that he sells the scholarships and collects amounts due to plaintiff. The amounts collected are forwarded to Chicago to its accounting department and from there transferred to Scranton, Pa.
Plaintiff’s method of obtaining patronage is by interesting those who wish to improve themselves by study along particular lines. If they accept the proposal submitted, they sign a contract. If it be, for instance, electrical engineering, the contract is signed by the one buying the scholarship; he then remits the first installment, and the plaintiff hands him a receipt, and the amount paid, as well as the contract, are forwarded to Chicago to the cashier of the institution in that city; but it is not accepted by the company until it is delivered in Scranton, Pa.; after it has been received at that place, a copy of the contract is addressed to the student here, with advice that his contract has been accepted.
The first part of the contract is a promise to pay the “sum of ...... dollars as follows,” “...... dollars at the time of,” and “......' dollars each month until the price is paid.”
The foregoing is an extract from the contract.
Plaintiff’s contention is that the situs of the contract is at the home of the creditor, written in Pennsylvania, accepted in that state, and that it remains after its acceptance in the possession of the company at its domicile; that it is evidence of a debt of the local subscriber, his written promise; and that it becomes a credit of plaintiff at its domicile. The plaintiff urged that it does not conduct a business in this state; that all instructions issue from the institution at Scranton, Pa.
The intention of the Legislature is plain. It was to fix a situs for the taxation of mortgages and other evidence of indebtedness so that they are taxable at the domicile. All conflicting laws were repealed.
Anterior to the last-mentioned act, a number of suits were instituted, and the main question had been passed upon by the United States Supreme Court. Under former laws there was a superabundance of .issues argued by distinguished counsel and decided by the courts.
The direction in Statute of 1886, No. 98, was to assess movable property in the parish where located. The court limited the section in its application to tangible, movable property, but • held that incorporeal rights were still taxable at the domicile of the creditor. The limitation ¡adopted by this court was thereafter observed in taxing intangible property. The court, to be explicit and exact, held that a debt represented *105 by judgment was taxable at the domicile. Meyer v. Pleasant, 41 La. Ann. 645, 6 South. 258.
Similar views were expressed in Paving Co. v. City, 41 La. Ann. 1017, 6 South. 794. The court went a step further than expressed in the Pleasant Case and extended, for reasons in the main stated in the first opinion, the interpretation so as to include foreign creditors as owners who could not be taxed in this state on property classed as intangible property. The court in the last-cited case said:
“If the rule applies to residents of different parishes, a fortiori it will protect citizens or residents of other states.”
Section 10 of 1888 (Act No. 85 of 1888) contains the same provision as section 10 of 1886 (Act No. 98 of 1886.) At the time, jurisprudence was considered well settled upon the point here involved. When the Act of 1890, § 7, p. 124, No. 106, was enacted, the legislative intent was not clearly expressed regarding the place at which to assess incorporeal property. It was decided ultimately by the courts that it was assessable at the domicile of the debtors. The Act of 1898, No. 170, § 7, was substantially similar.
Again, there were suits brought to test the meaning of the respective sections as they differed from the Act of 1886 above cited; that is, sections of acts cited supra of 1890 and 1S98 were different from provisions of Act of 1886, No. 98, upon the subject
This court decided under the last-cited act that the property was assessable at domicile of the creditor. A writ of error was taken from one of the decisions of this court to the Supreme Court of the United States. This was a test case. Justice Moody of the Supreme Court of the United States brought the controversy to a close under these last-cited acts. See the Metropolitan Case, 205 U. S. 395, 27 Sup. Ct. 499, 51 L. Ed. 853. The evident purpose of this law, the learned Justice said, in deciding that case, is equal taxation upon those in business in the state, and added that the average stock in the business shall be taxed impartially on all persons. Bills, receivable obligations, or other credits shall be assessed at the domicile of persons assessed. Quoting the words of the learned justice:
“Cash and credits and bills receivable are to be taken into account merely because they represent the capital and are not • to be omitted because their owner happens to have a domicile in another state.”
The different views previously expressed were necessarily made to harmonize in compliance with the last-cited case.
[1,2] The lawmaking power, in 1908 (Act 170, p. 230, that year), under the state law before quoted, reopened the question, and again the issue is before the courts of this state.
The language of the last-cited act evidences the intent to fix the domicile of the creditor at the place at which to collect the taxes. The extent of the departure that was intended by the lawmaking power, and the constitutionality of the act has given rise to the suit before us for decision.
The first proposition of the tax collector and others in support of their contention is that the cited act does not include the property which plaintiff seeks to have decreed as not subject to local taxation. As relates to the preamble of the Act 170 of 190S we deem it sufficient to say in answer to defendants’ arguments:
Taxing the mortgage, by which the property is burdened, and the property itself as though not mortgaged has never been held by this court as double assessment. That defense has sometimes been invoked in suits by owners of lands wishing to have the amount of the assessment reduced, but never successfully. Mortgages are exempt.
It was evidently not the intention in adopting the last-cited act only to prevent the *107 dual assessment of- mortgages, or, if it was, it is not now a live issue, as mortgages are not taxable.
And that part of the preamble relating to dual taxation has no meaning as relates to mortgages, as they are exempt entirely from taxation.
It is more probable that the intention, if there was a well-defined intention, was to prevent taxing property in another jurisdiction and at the same time at the home of the owner. In any event paper values as well as mortgages under the cited act are taxable at the domicile of the creditor.
Bie all that as it may, we are only concerned with the interpretation of Act 170 of 1908.
The language is plain and direct.
The defendants through counsel argue that the evidence of indebtedness not- taxable refers to indebtedness secured by mortgage. To give it that construction requires reading -into the act a repetition of “mortgage” that the lawmaking authority did not see proper to insert. The word “mortgage” does not refer to this indebtedness. The act does not read notes and other evidence of indebtedness “secured by mortgage”; it refers to these alone.
The words of the Act of 1908, No. 170, are substantially similar to those used by the assessor in assessing the property. In answer to defendants’ contention that the intention was to fix the situs when the home of the tax debtor is in this state: The Legislature did not thus limit the effect. On the contrary, the statute refers to the situs of all property intangible in nature whether in this state or not.
"We will not limit as applying exclusively to property of owners residing in this state. On a former decision, -it was held that similar words -did not affect only the property in this state, but property everywhere, the property of owners residing in other states as well as those in this state. 41 La. Ann., cited above. The act just cited does not exempt property from taxation contrary to the requirement of the Constitution, which provides that additional property shall not be exempted by the Legislature.
The Legislature is not prevented from determining in what locality the property shall be classed as situated, in order to make the assessment.
It is a question of administration and the act does not have for purpose the exemption of property from taxation. It is general and makes provision for assessing property at the domicile of the owner, a power of the Legislature that has never been questioned. Besides, all property in this state may be taxed; -it is not an exemption of property on the part of the Legislature to adopt in yet declaring that property shall be taxed at the domicile of the creditor.
Assessment and taxation of values under the Act 170 of 1908 reinstates the position as it was under Act 85 of 1888 and Act 98 of 1886, which was never considered in the light of exempting property from taxation. Under these last acts, every phase of the question had been considered and decided by this court. It was only after new acts, referred to above, adopted after 1890, that the court changed anterior jurisprudence in order to comply with the new statute as interpreted by this court and the United States Supreme Court in the case in which Justice Moody was the organ of the court, to which we have before referred.
•Since, by the Act of 1908, No. 170, the lawmaking power has reinstated the acts prior to 1890 — that is, Act 1886, No. 98 — the act of 1886 was in force a number of years, and stood the tests until it was repealed by subsequent legislation, which act has been repealed recently.
For reasons assigned, the judgment is affirmed.
PROVOSTY, J„ dissents.