LALAH M. TRUELOVE ET AL. v. LIZZIE PARKER ET AL.

(Filed 24 March, 1926.)

**1. Adoption—Parent and Child—Parties—Consent—Descent and Distribution.**

　　The procedure for the adoption of minors is prescribed by statute, which requires that a petition must be filed, that there must be parties of record, and the consent required by the statute. The parent or guardian, etc., must be a party to the proceeding. If both parties are living they must be made parties. Their consent or the consent of the survivor is essential and they must have an opportunity to be heard in order to express their consent. To be heard in a judicial sense and to be bound by the order, they must be parties to the proceeding.

TRUELOVE *v.* PARKER.

**2. Adoption—Petition—Record.**

In this case the petition, the order of adoption and the letters of adoption constituted the entire proceeding before the clerk. It does not appear from the record that the father and mother of the child were parties as the statute requires and in this respect it is held that the proceeding was defective.

**3. Summons—Voluntary Appearance.**

The record does not show that a summons or other final notice was issued and served or that the father and mother made a voluntary appearance, and it is held that as a general rule the notice required by the statute must be given, and in its absence the proceeding may be held defective.

**4. No Service of Process.**

Where a defendant has never been served with process or appeared in person or by attorney, a judgment rendered against him is not simply voidable but void, and may be so treated whenever and wherever offered without any direct proceeding to vacate it.

**5. Abandonment.**

To constitute abandonment by a parent of its child, so as to deprive him of the right to prevent the adoption of the child, there must be some conduct on the part of the parent which evinces a purpose to forego parental duties.

**6. Parties—Adoption.**

Upon the record in this case it is held that neither the father nor the mother of the child was a party to the proceeding within the contemplation of the statute, and that the clerk had no jurisdiction of their person, and having no jurisdiction of their person, he had no jurisdiction of the subject-matter.

**7. Same—Equity—Estoppel.**

Where an order by the clerk in proceedings to adopt an infant is void *ab initio*, it is not binding upon the parties, and where the foster parent is dead and the question is one of the descent of his property to the heirs of the deceased adopted child, or the collateral heirs of the foster parent, there is no mutuality upon which an estoppel could operate either under the judgment or the subsequent acquiescence of the original parties.

CONNOR, J., concurring.
CLARKSON, J., concurring in result.
STACY, C. J., dissenting.

APPEAL by the plaintiffs and certain of the defendants from *Devin, J.*, at November Term, 1925, of HARNETT.

Controversy without action (C. S., 626), to determine the title to land and to remove a cloud from title, submitted upon the following statement of facts agreed:

1. On or about 20 July, 1912, John A. Weathers filed with the clerk of Superior Court of Harnett County a writing purporting to be a petition for the adoption of Irma Johnson, for life, a copy of which is

hereto attached and marked Exhibit "A." And on 26 July, 1912, the clerk of Superior Court entered an order purporting to be an order of adoption and issued letters of adoption, of which order and letters, a copy is attached hereto and marked Exhibit "B." The exhibits constitute all the proceedings in said case. After the adoption proceedings, Irma Johnson, lived in the home with John A. Weathers and his wife and was thereafter known as Irma Johnson Weathers, until the death of the said John A. Weathers and his wife.

2. Thereafter, on or about 6 April, 1922, the said John A. Weathers died intestate and at the time of his death was seized and possessed in fee of the lands described in paragraph 6 of the complaint of Lalah M. Truelove and others therein.

3. At the time of his death, the said John A. Weathers left surviving him Irma Johnson Weathers, the adopted daughter; he also left surviving him the plaintiffs, Lalah M. Truelove, Corrina Blalock, Vallie Weathers, Hepsie A. Holt, Frances Rosser, the heirs of Bettie Lawrence, and the heirs of Nannie Gunter, of whom Lalah M. Truelove, Corrina Blalock, Vallie Weathers and Nannie Gunter were full sisters of the said John A. Weathers and the said Hepsie A. Holt, Bettie Lawrence and Frances Rosser were half-sisters of the said John A. Weathers; and left surviving him no child or issue of any child save and except that he was survived by the said Irma Johnson Weathers.

4. Shortly thereafter Irma Johnson Weathers died intestate, leaving surviving her, Minnie Parker and Lucian Johnson, her natural mother and father, Haze Johnson, her whole brother, Lizzie Parker and Frances Parker, her half-sisters, and Ernest Parker, a half-brother. All parties to this action.

5. After the birth of Haze Johnson and Irma Johnson Weathers, Lucian Johnson and his wife, Minnie Rollins Johnson separated themselves from each other and never lived together again, and never obtained a divorce. And after the said separation Minnie Rollins Johnson associated herself with Frank Parker without a legal marriage, and to that association were born the half-sisters, Lizzie Parker and Frances Parker and the half-brother, Ernest Parker, who are the children of Minnie Parker and Frank Parker; neither of whom are of the blood of John A. Weathers or in any way related to him by blood.

6. The defendant, Haze Johnson, since this suit has been instituted, by regular warranty deed of conveyance, conveyed all of the land described herein to the defendant, Victor R. Johnson, and the defendant, Victor R. Johnson, has by regular deed of conveyance conveyed two-thirds undivided interest in the said land to the defendant, C. W. Sandrock; all parties of this suit.

Claims of the parties:

1. The defendant, Victor R. Johnson, claims title to one-third undivided interest in the land described herein, and the defendant, C. W. Sandrock, claims title to two-thirds undivided interest in the said land under the deed from Haze Johnson, the nearest collateral relative to the intestate, Irma Johnson Weathers.

2. The defendants, Lizzie Parker, Frances Parker and Ernest Parker, claim title to three-fourths of the land, as collateral heirs to Irma Johnson Weathers.

3. The parties hereto, Lucian Johnson and Minnie Parker, claim title to the land as tenants in common, as the sole successors to the title of Irma Johnson Weathers.

4. Lalah M. Truelove and the other brothers and sisters and their legal representatives, who are parties hereto, claim title to the land by reason of their collateral inheritance from John A. Weathers.

Exhibit "A" is as follows:

NORTH CAROLINA—HARNETT COUNTY.
In the Superior Court.

| J. A. Weathers | |
|---|---|
| v. | Petition for Adoption. |
| L. J. Johnson and Martha Johnson. | |

To F. H. Taylor, clerk Superior Court of Harnett County:

The petition of J. A. Weathers of said county and State, respectively showeth:

1. That Irma Johnson is a female child of the age of five years, and is at present residing with the said J. A. Weathers of said county.

2. That L. J. Johnson and Martha Johnson, father and mother of the child are living.

3. That Martha Johnson, mother of the child, has been living away from her husband and child for the past two years, and takes no interest whatever in said child.

4. That L. J. Johnson, father of the child is not capable of properly providing for said child and gives his consent to the adoption of said child by said J. A. Weathers.

5. That the said child has no estate of any kind, either real, personal or mixed, and is entirely dependent on said J. A. Weathers, with whom the said child now resides.

6. The petitioner desires to adopt the said child for life, to which adoption L. J. Johnson, father of the child consents.

28—191

Wherefore, the petitioner prays that he may be allowed to adopt the said child for the life of said child, and that letters of adoption may be granted him by the court. J. A. WEATHERS, *Petitioner.*

This 26 July, 1912.

Exhibit "B" is as follows:

J. A. Weathers
v. } Order of Adoption.
L. J. Johnson and Martha Johnson.

This cause coming on to be heard upon the allegations of the petitioner, and being heard, and it appearing to the court that Irma Johnson is a child without any estate, and that Martha Johnson, mother of the child is living away from her husband and child and takes no interest whatever in said child, and that L. J. Johnson, father of the child is not capable of properly providing for said child and consents to the adoption of said child by said J. A. Weathers, who is a proper and suitable person to have the custody of said child, and who desires to adopt said child for life:

It is therefore, ordered and adjudged by the court that letters of adoption be, and the same are hereby granted to the said J. A. Weathers, to the end that the relations of parent and child be established for life between the said J. A. Weathers and the said Irma Johnson, with all the duties, powers and rights belonging to the relationship of parent and child. F. H. TAYLOR, *Clerk Superior Court.*

This 26 July, 1912.

NORTH CAROLINA—Harnett County Superior Court.

LETTERS OF ADOPTION.

STATE OF NORTH CAROLINA, to all to whom these shall come—Greeting:

J. A. Weathers, having applied by petition to the undersigned clerk of the Superior Court of Harnett County, for the adoption of Irma Johnson, a female child for life; and the said J. A. Weathers having satisfied the undersigned that he is a suitable person to have charge of said child; and an order of court having been made granting the petition of said J. A. Weathers:

These are therefore to authorize and empower the said .... ..................
to take charge of the said orphan for life to the end that the relationship of parent and child may be fully established between said J. A. Weathers and said Irma Johnson, a female child, agreeably to an order made by the court.

Witness my hand and official seal, this 26 July, 1912.

F. H. TAYLOR, *Clerk Superior Court.*

His Honor was of opinion that upon the death of John A. Weathers the land in controversy descended to Irma Johnson Weathers and upon her death to her brother Haze Johnson as her only heir at law; and thereupon it was adjudged that by the conveyance of Haze Johnson to Victor R. Johnson and by the latter's conveyance of a two-thirds interest to Sandrock, the title passed to Victor R. Johnson and Sandrock in the proportion of one-third and two-thirds respectively, as set out in the statement of facts, and that they are the owners and entitled to the possession of the land. The plaintiffs and all the defendants except Haze Johnson, Victor R. Johnson and C. W. Sandrock excepted and appealed.

*Seawell & McPherson and Teague & Teague for Lalah Truelove and others, plaintiffs.*
*W. P. Byrd and W. P. Aycock for Minnie Parker.*
*J. Elmer Long and Young & Young for Lucian J. Johnson.*
*W. S. Lockhart for Victor R. Johnson.*
*Rose & Lyon for C. W. Sandrock.*

ADAMS, J. On 26 July, 1912, the clerk of the Superior Court of Harnett County issued letters of adoption purporting to establish the relation of parent and child between John A. Weathers and Irma Johnson, who at that time was five years of age. Thereafter Irma lived in the home of Weathers and his wife and was known as Irma Johnson Weathers. John A. Weathers died intestate on 6 April, 1922, seized of about eight hundred acres of land. He left no issue; but Irma's death occurred a few hours after his. He was survived also by the plaintiffs, who are his brothers and sisters. Irma was survived by her father and mother, one illegitimate half-brother, two illegitimate half-sisters, and one whole brother, Haze Johnson, whose interest in the land, if any, has passed by conveyances to Victor R. Johnson and C. W. Sandrock. All these are parties to the action and represent the several conflicting claims of title. The father and mother of Irma contend that under the provisions of C. S., 185, the order of adoption enabled her to inherit, and that she did inherit, the real estate of John A. Weathers in like manner and to the same extent as if she had been his actual child; also, that upon her death the title she had thus acquired vested in them as tenants in common by virtue of the proviso in the sixth canon of descents. C. S., 1654(6). Haze Johnson and his successors in interest say that Irma's estate was not derived or transmitted to her from an ancestor, but acquired by force of the order of adoption, and that her title therefore descended under the fifth rule to Haze Johnson as her next collateral relation. On the other hand, the plaintiffs insist

that the adoption proceeding is fatally defective and utterly void; that Irma acquired no title to the land; and that as the heirs at law of John A. Weathers they are entitled to his real estate. At the threshold of these contentions we are confronted with the grave question whether the proceeding is void and therefore subject to collateral attack.

The procedure for the adoption of minors is prescribed by statute: a petition must be filed; there must be parties of record; and with the requisite consent an order may be made granting letters of adoption. C. S., ch. 2. Section 183 provides that the parent or guardian, etc., must be a party to the proceeding. We think the words "the parent," should not be interpreted, if both parents are living, to include the father and exclude the mother, for these several statutes construed as a whole seem to import that ordinarily both the parents if living shall be parties. The petition must set forth their names; and if both are living their consent is as a rule prerequisite to an order granting the letters; or, if one is dead, the consent of the survivor. If their consent is essential they must have an opportunity to be heard; and to be heard in a judicial sense and to be bound by the order they must be parties to the proceeding.

At common law parental rights were vested in the father, and the mother had no legal interest in the custody or earnings of her children; but modern decisions have relaxed the common-law doctrine and have indicated a manifest tendency to equalize the rights of custody and control. True, under our own decisions the father is considered in law as the head of the household and as such entitled in the first instance to the custody of his child,—a right necessarily springing from his duty to provide for the child's protection, maintenance, and education. But this right is not absolute; circumstances often occur in which it may be questioned; and beyond doubt the mother's natural interest in the welfare of her children is not less profound than that of the father. *Newsome v. Bunch,* 144 N. C., 15; *In re Fain,* 172 N. C., 790. A father may by deed dispose of the custody and tuition of his unmarried child for such time as it may remain under the age of twenty-one years; but only with the written consent and privy examination of the mother, if she be living. He may make such disposition by his last will and testament in writing; but only if the mother be dead. If the father die without exercising the right of appointment, or if he wilfully abandon his wife, the mother may in like manner dispose of the custody and tuition of her unmarried infant child. 3 C. S., 2151. In all these statutes, and in others, the Legislature has recognized the human as well as the legal relation between parent and child, the paramount and the subordinate, the present and the inchoate, rights of the father and the mother, and has wisely provided that both the parents shall have ade-

TRUELOVE *v.* PARKER.

quate opportunity to be heard and, except in rare cases, shall give their consent before ,the legal relation is severed or the domestic circle is broken. We cannot yield our assent to the proposition that because Irma resided with Weathers when his petition was filed it was not necessary to make her parents parties to the proceeding. The statute contemplates an adjudication concerning adverse interests. And the failure to observe the statutory requirements as to notice and consent is not a mere irregularity which is immune from collateral attack, for they are jurisdictional and without them, as a general rule, a valid order of adoption cannot be made.

The plaintiffs contend that these requisites are wanting; the defendants contend that we should proceed upon the presumption that the court had jurisdiction of the parties and that the proceeding is regular. The proceedings, whether it be deemed judicial or a proceeding *in rem* or *quasi in rem,* calls for the exercise only of such judicial functions as are conferred by chapter 2 of the Consolidated Statutes and to this extent the jurisdiction of the clerk is limited and special. "The jurisdiction in such cases both as to the subject-matter of the judgment and as to the persons to be affected by it must appear by the record; and everything will be presumed to be without the jurisdiction which does not distinctly appear to be within it. The power to enter a decree of adoption conferred upon a court of general jurisdiction is a special and summary power of this class, and the facts essential to the exercise of the special jurisdiction must appear upon the record. To give a decree of adoption any force or effect, jurisdiction must have been acquired by the court, first, over the person seeking to adopt the child; second, over the child; and third, over the parents of the child; and there can be no presumption that jurisdiction was obtained over the parent of the child if the record of adoption is silent on the subject." 1 R. C. L., 603, sec. 11.

In the light of this principle let us see whether it appears upon the record that the court had jurisdiction over Irma's father and mother. When the clerk made the order of adoption the only paper before him was the petition. The petition, the order of adoption, and the letters of adoption constitute the entire proceeding. Statement of facts, par. 1. It does not affirmatively appear that the father and mother of the child were "parties of record in this proceeding," as the statute requires. Sec. 183. Indeed, it does not affirmatively appear that either of them was a party. No summons or other similar notice was issued and served; there was no voluntary appearance; and of course the caption of the petition did not supply this defect. It is to be noted that the order of adoption contains no recital of the service of process or the appearance of the child's parents. In the order there is a recital of the father's consent to the adoption; and from this, it is said, his appearance may be

inferred; but as the order purports to repeat and approve each allegation of the petition, including that of the father's consent, in the absence of any other suggestion of the father's presence or appearance in the proceeding, we may reasonably infer that the clerk assumed the petition to be true and upon this assumption adjudged the adoption without further inquiry or investigation. In any event, it does not affirmatively appear that the father was present or represented in the proceeding. In *Doyle v. Brown,* 72 N. C., 393, it is said: "Where a defendant has never been served with process, nor appeared in person or by attorney, a judgment against him is not simply voidable, but void; and it may be so treated whenever and wherever offered, without any direct proceedings to vacate it. And the reason is, that the want of service of process and the want of appearance is shown by the record itself, whenever it is offered. It would be otherwise if the record showed service of process or appearance when in fact there had been none. In such case the judgment would be apparently regular and would be conclusive until by a direct proceeding for the purpose it would be vacated." *Carter v. Rountree,* 109 N. C., 29; *Moore v. Packer,* 174 N. C., 665.

It is not pretended that Martha Johnson (or Minnie Parker), the mother, was a party of record; but the defendants seek to relieve the necessity of her consent and the service of process on her by alleging that she had abandoned her child and had forfeited her rights and privileges with respect to its care, custody, and services. In 1 C. J., 1387(76) it is said: "To constitute such an abandonment by a parent as will deprive him of the right to prevent the adoption of his child, and dispense with the necessity of his consent, there must be some conduct on his part which evinces a settled purpose to forego all parental duties. But merely permitting the child to remain for a time undisturbed in the care of others is not such an abandonment." By the terms of the statute it is necessary that such abandonment be wilful,—that is, accomplished purposely and deliberately in violation of law. *S. v. Whitener,* 93 N. C., 590. The clerk's finding (which is the recital of another allegation in the petition), as set forth in the order of adoption, is in these words: "Martha Johnson, mother of the child, is living away from her husband and child and takes no interest whatever in said child." It does not appear upon the face of the record whether her absence was compulsory, negligent, or wilful; and in a proceeding of this kind inferences cannot supply the want of an affirmative adjudication. "When a petition alleges abandonment of a child it must make a case strictly within the provisions of the statute relating to such abandonment." 1 C. J., 1385 (61).

The mother had no actual or constructive notice of the proceeding and no opportunity to be heard on the question of abandonment. It is held in a number of cases decided elsewhere that the existence of abandon-

ment as ground for an adoption without parental consent must be judicially determined and that notice to the parent of the adoption proceeding is essential to cut off his rights. 1 R. C. L., 628 (39); *Schiltz v. Roenitz,* 21 L. R. A. (Wis.), 483; *Beatty v. Davenport,* 122 A. S. R. (Wash.), 937; *ibid.,* 13 Anno. Cas., 585 and note; *In re Cozza,* 31 Anno. Cas. (Cal.), 214 and note, page 222. Such notice may not be necessary in every case; but when the parent, as in the case at bar, is within the jurisdiction of the court and subject to its process, an order of adoption based upon his alleged abondonment should not ordinarily be held conclusive against him unless he has had notice of the proceeding and an opportunity to be heard in defense.

Upon the record as it has come to us we are of opinion that neither the father nor the mother of Irma Johnson was a party to the adoption proceeding within the contemplation of the statute, and that the clerk had no jurisdiction of their person. Having no jurisdiction of their person he had no jurisdiction of the subject-matter: consent is essential to the order of adoption (sec. 184), and when the statute requires it to be given jurisdiction of the subject-matter cannot be acquired without it. 1 C. J., 1384 (57); *In re Cozza, supra,* note, page 221.

But it is contended on behalf of the defendants that John A. Weathers voluntarily entered into the contract of adoption, and during his lifetime recognized the relation thus created, and that after his death his heirs at law should not be permitted to avail themselves of a departure from the directions of the statute to defeat the rights of the child, and 10 R. C. L., 764 (81) is cited in support of the position. The principle no doubt applies in case of a mere technical disregard of the statute; but as the clerk had acquired no jurisdiction his order and letters of adoption are not simply irregular; as we have said they are void. In consequence they were binding neither on the father and mother nor on the adopting parent, because estoppels must be mutual; and if not conclusive against the parties, the order is not conclusive against their privies. *Ferguson v. Jones,* 11 A. S. R., 808, and cases cited in note, page 821; 1 C. J., 1393; *Doyle v. Brown, supra; Kissam v. Gaylord,* 46 N. C., 294, 298; *Peebles v. Pate,* 90 N. C., 348; *Dudley v. Jeffress,* 178 N. C., 111.

We do not concur in the argument that because the father and mother did not formally object to the letters of adoption during the lifetime of John A. Weathers they impliedly assented thereto and may now express their approval and thereby impart vitality to the clerk's order. This order is void *ab initio;* and the title to the land vested at the instant John A. Weathers died. It follows that the subsequent consent of the father and mother could neither divest the title nor confer jurisdiction upon the court.

We must not be understood as disparaging in any respect the legislative policy of providing for the adoption of minor children. That its wisdom is apparent is clearly expressed in these words: "Under them (adoption laws) innocent, parentless and abandoned children are withdrawn from the charity of public institutions and provided with comfortable homes and affectionate foster parents. Unfortunate children, whose parents, through overwhelming adversity, or the infirmities of their nature, are unable to care and provide for them, are placed in cheerful homes under the care and control of adoptive parents willing and able to provide for their protection and comfort." *Estate of McKeag*, 99 A. S. R., 80, 84. The approval of this policy is commendable. No less commendable is observance of an elemental principle which is designed to protect minor children from influences and associations that are vicious or immoral; and the principle cannot be affected in this instance by the alleged lapse of the mother.

In our opinion the order of adoption is void and subject to collateral attack; and as the plaintiffs have succeeded to the title of John A. Weathers they should be adjudged the owners of the land in controversy.

Error.

CONNOR, J. I concur fully with the opinion of the Court upon which the decision in this case is founded. It doubtless becomes a precedent. It affords assurance to all mothers that they cannot, under the laws of this State be deprived of the custody of their children by adoption proceedings to which they have not consented or to which they have not been made parties to the end that they may be heard before any order is made depriving them of their rights. The decision recognizes that the mother as well as the father has rights to the custody of the child; she cannot be held to have forfeited such rights without a hearing. The court is without jurisdiction to make an order for the adoption of a child by a stranger until both parents, if living, have consented to the adoption or until the court has found after a hearing, of which due notice has been given to both, that the parents have forfeited their rights to the custody of the child. The mother cannot be held to have forfeited such rights until she has had notice of the proceedings, merely because the father has consented to the adoption; upon this record, it does not appear that either the father or mother of the child was a party of record to the proceeding.

After the court has acquired jurisdiction by a proceeding to which both parents, if living, are parties, with full opportunity to be heard, then the order of adoption will not thereafter be set aside for mere irregularities, especially when the relationship arising from the adop-

tion has been acquiesced in by all interested parties and rights growing out of the relationship have accrued. No apprehension need be felt that this decision will hereafter be cited as an authority to give this Court or the mothers of the State trouble.

CLARKSON, J., concurring in the result: I concur in the conclusion reached in the opinion of the Court.

STACY, C. J., dissenting: To my mind, the judgment of the majority is at variance with the legislative intent touching the subject of adoption, and hence I am constrained to state the reasons for my dissent.

On 26 July, 1912, John A. Weathers filed in the Superior Court of Harnett County a petition for the adoption of Irma Johnson, a minor residing at that time with the petitioner in said county. The petition recites that Irma Johnson is a female child, five years of age, the daughter of L. J. and Martha Johnson; "that Martha Johnson, mother of the child, has been living away from her husband and child for the past two years, and takes no interest whatever in said child"; that the natural father of the child is not capable of properly providing for said minor, and gives his consent to her adoption by the petitioner; that the child has no estate of any kind, and is entirely dependent upon the petitioner, with whom she has resided for two years; and that the petitioner desires to adopt said child for life, to which adoption L. J. Johnson consents.

Thereupon, the court made and caused to be entered an order of adoption, based upon the finding "that Irma Johnson is a child without any estate; that Martha Johnson, mother of the child, is living away from her husband and child, and takes no interest whatever in said child; and that L. J. Johnson, father of the child, is not capable of properly providing for said child, and consents to the adoption of the child by J. A. Weathers, who is a proper and suitable person to have the custody of said child, and who desires to adopt her for life." Following the adoption, Irma Johnson lived in the home of John A. Weathers and his wife and assumed the name of Irma Johnson Weathers.

It appears as a fact that Martha Johnson abandoned her legal husband and children and thereafter associated herself in unlawful relation with one Frank Parker.

Irma Johnson Weathers lived with her foster parents, John A. Weathers and his wife, who had no other children, for nearly ten years, when they were all killed in an automobile accident, 6 April, 1922, Irma Johnson Weathers surviving both John A. Weathers and his wife.

This suit is a contest over the estate of John A. Weathers. The plaintiffs are his collateral heirs, while the defendants are the heirs of Irma Johnson Weathers, or they claim through her.

It is conceded that, if the adoption in 1912 be valid, Irma Johnson Weathers succeeded to or inherited the estate; otherwise it is to go to the plaintiffs.

Let it be observed in the outset that this attack upon the order of adoption is not made by the natural parents of Irma Johnson, or any one claiming under her, but by the collateral heirs of John A. Weathers, deceased. This observation is made *in limine* because it has been held that attacks of this kind should not be entertained when made by the heirs or representatives of the adoptive parent, who was a party to the proceeding, except for jurisdictional defects appearing on the record. *Coleman v. Coleman,* 81 Ark., 7; *Wilson v. Otis,* 71 N. H., 483; *Morris v. Dooley,* 59 Ark., 483; *Watts v. Dull,* 184 Ill., 86; *Foley v. Foley,* 61 Ill. App., 577; *Crocker v. Balch,* 104 Tenn., 6. And in the absence of evidence to show a want of jurisdiction, the presumption in favor of such jurisdiction should prevail. *Josey v. Brown,* 119 Ga., 758; *In re Camp,* 131 Cal., 469.

It has also been held that where the court has jurisdiction of the subject-matter and of the parties, an irregularity which might render the decree voidable at the election of the infant is no ground for a collateral attack by those claiming under the adoptive parent. *Sewall v. Roberts,* 115 Mass., 262. The fact that the natural parents were not served with notice of the proceeding to adopt their child has been held not to render an order of adoption entered in such proceeding invalid as to the parties thereto and their privies, although the proceeding might have been successfully attacked by the parents for that reason. *Coleman v. Coleman,* 81 Ark., 7; *Woodard's Appeal,* 81 Conn., 152; *Sullivan v. People,* 224 Ill., 468; *Ross v. Ross,* 129 Mass., 243; *Beatty v. Davenport,* 45 Wash., 555; 30 L. R. A. (N. S.), 147 note; 1 R. C. L., 608.

In *Woodard's Appeal, supra,* the Court reasoned that even though the parents of the adopted child had the right to contest the validity of the adoption in so far as it deprived them of their legal parental rights, because no notice of the proceeding had been given to them, it did not follow that a decree giving to the infant statutory capacity of inheritance from a stranger, rendered in pursuance of jurisdiction conferred by statute and in the manner prescribed thereby, should be held invalid for that reason.

In the case of *In re Evans,* 106 Cal., 565, the same view is expressed in the following language: "Various irregularities in the proceedings are urged, but, after these papers were executed before the judge, and this man and this child lived together as father and daughter for ten years and down to the day of his death, it requires more than mere irregularities to brush aside and annul a relationship entered into with

all honesty of purpose, lived up to for many years, and only severed by the hand of death." To like effect are the decisions in *Estate of McKeag,* 141 Cal., 403; *In re Johnson,* 98 Cal., 545; *Parsons v. Parsons,* 101 Wis., 83; *Van Matre v. Sankey,* 148 Ill., 536; *Sewall v. Roberts,* 115 Mass., 276.

And in *Nugent v. Powell,* 4 Wyo., 201, it is said: "Notwithstanding these proceedings in adoption, the father might at any time since·they took place have brought an action for the possession or custody of the child, and no one will contend, or perhaps can successfully contend, that in such case these adoption proceedings would constitute a bar to the father's action, or that they were conclusive upon him. But it does not follow that because the adoption proceedings were not conclusive upon the father, they were not conclusive upon the parties to the proceedings and their privies; on the contrary, we think they are, and so hold."

Again, it is the holding of a number of courts that though the adoption may be voidable at the instance of the child or its natural parents because of a failure to comply with some requirement of the statute, yet if all the conditions have been performed or complied with on the part of the child, or of those who agreed and consented to the adoption, so that the adoptive parent has received full consideration or recompense therefor, the child will ordinarily be entitled to enforce its property rights arising under such adoption. *Chehak v. Battles,* 133 La., 107; *Starkey v. McDermott,* 91 Mo., 647; *Nowack v. Berger,* 133 Mo., 24; *Burns v. Smith,* 21 Mont., 251; *Kofka v. Rosicky,* 41 Neb., 328; *Van Tine v. Van Tine* (N. J.), 15 Atl., 249; 1 R. C. L., 617.

In Wolf's Appeal (Pa.), 13 Atl., 764, this position is clearly stated as follows: "Nearly nine years after the decree was entered, and more than one year after the death of her adopted father, his administrator and collateral heirs come into court and ask that this decree of adoption be vacated. They are not here in the interest nor on behalf of the innocent subject of adoption, but decidedly against the same. They are either strangers to the adoption proceedings, and therefore have no standing in court, or they are privies in blood or·in law, and stand in the shoes of Samuel Sankey, through and under whom they claim. Surely Samuel Sankey, if living, would not be heard in this Court questioning its decree made at his solicitation. He invoked the jurisdiction of the court; he asked that the decree of adoption should be made; he got what he desired; and he would not now be allowed to question the means he set in motion. If any wrong was done, Samuel Sankey did it, and neither he nor those who claim under him can be permitted to take advantage of his wrong to the prejudice of an innocent party. On the argument many cases were cited where decrees of adoption have

been set aside at the instance or in the interests of the adopted child, but none were cited nor will any likely ever be found where such decrees were revoked at the instance of the party who invoked the power of the court, and sought and obtained its decree, when such revocation would be to the prejudice of the innocent child."

The above cases are cited only to show how the matter has been dealt with in other jurisdictions. The present record, of course, must be considered in the light of our own legislation on the subject. It is conceded that the act of adopting a child is not a matter of common-law origin, but was taken from the civil law and introduced here by statute. *Furgeson v. Jones,* 17 Ore., 204. The pertinent sections on the subject as found in chapter 2 of the Consolidated Statutes provide as follows:

First, that any person desiring to adopt a minor child may file a petition in the Superior Court of the county wherein such child resides, setting forth the name and age of the child and the names of its parents, whether the parents or either of them are living, and if there be no living parent, the name of the guardian, if any, and if there be no guardian, the name of the person having charge of the child or with whom such child resides, the amount and nature of the child's estate, if any, and especially whether the adoption is for the minority or for the life of the child. C. S., 182.

Second, that the parent or guardian, or the person having charge of such child, or with whom it may reside, must be a party of record in the proceeding. C. S., 183.

Third, that in all cases where the parent or parents of any child has wilfully abandoned the care, custody, nurture and maintenance of the child to kindred, relatives or other persons, such parent or parents shall be deemed to have forfeited all rights and privileges with respect to the care, custody and services of the child. C. S., 189.

It is not required that the proceeding be adverse; it may be *ex parte,* and not infrequently is; it is commenced by petition; no summons is necessary. *Rector v. Logging Co.,* 179 N. C., 59; *Caldwell v. Wilson,* 121 N. C., p. 453. The parents of the child, if living, must appear as parties of record. Here they do appear as parties of record. The father consents to the adoption. The mother does not, but it is found as a fact "that Martha Johnson, mother of the child, is living away from her husband and child and takes no interest whatever in said child." While this finding, standing alone, may not be sufficient to show a wilful abandonment on the part of Martha Johnson, such as is required by C. S., 189, to forfeit all her rights and privileges with respect to the care, custody and services of such child, yet it does appear by evidence in the present proceeding, that, as a matter of fact, the said Martha

Johnson did separate herself from her husband and children and thereafter live in adultery with one Frank Parker. What more is necessary to show a wilful abandonment of her infant daughter, less than three years of age? If this evidence be competent, and I think it is, the failure to notify her at the time, ought not to be held as a fatal defect to the adoption proceeding. She had forfeited all her rights and privileges with respect to the care, custody and services of such child; and having thus forfeited her rights, no notice to her was required in order to give the court jurisdiction. *Nugent v. Powell,* 4 Wyo., 173; *Wilson v. Otis,* 71 N. H., 483. If notice to the natural parent has been rendered unnecessary by a previous abandonment, such parent is bound by the decree, was the holding in *Richards v. Matheson,* 8 S. D., 77. Likewise, in *James v. James,* 35 Wash., 653, it was held that where a child is in the custody of its father and the mother is living separate and apart, her consent is not essential to a proceeding for its adoption. The pertinent decisions are to the effect that even jurisdictional facts, or those necessary to show that a court or board of special or limited powers has acted within its jurisdiction, may be established by extrinsic evidence, in the absence of a statute requiring such facts to appear of record. *In re Williams,* 102 Cal., 70; *Van Dusen v. Sweet,* 51 N. Y., 378; *Williams v. Cammack,* 27 Miss., 209.

Here, the reason and excuse for proceeding without the consent of Martha Johnson, since she had forfeited her rights of custody, etc., under C. S., 189, may be shown by extrinsic evidence in aid of upholding the validity of the proceeding, for a decree of adoption is not necessarily invalid because it does not recite, nor the petition allege, the assent of the parents or facts excusing their assent. *Wilson v. Otis,* 71 N. H., 483. See, also, *Crawford v. Wilson,* 139 Ga., 465.

I do not agree to the proposition stated in 1 R. C. L., 603, and approved by the majority opinion, for I do not think it is supported by the weight of authority or the better-considered decisions, that jurisdiction in adoption cases, both as to the subject-matter of the judgment and as to the persons to be affected by it, "must appear on the record, and everything will be presumed to be without the jurisdiction which does not distinctly appear to be within it." In the first place, when a court has attained the dignity of a court of record, there is a presumption in favor of its jurisdiction and the rightfulness of its decrees, when it assumes to act, and, until it has attained such dignity, it has no record by which it may speak at all. In the second place, even if its jurisdiction be special in such cases, unless the statute require some written evidence of its jurisdiction to be made and preserved, the general rule respecting judicial officers and courts of limited authority is that the jurisdictional facts, upon which their decrees rest, may be

TRUELOVE v. PARKER.

shown by extrinsic evidence, oral or written, in the absence of a statute requiring such facts to appear in the minutes or other record of its proceedings. *Jolly v. Foltz,* 34 Cal., 321; *Williams v. Cammack,* 27 Miss., 209; *Barnard v. Barnard,* 119 Ill., 98; *Estate of Williams,* 102 Cal., 70.

Certainly in a case like the present, a strict construction of these statutes ought not to be applied for the purpose of thwarting the will of the adoptive parent, and disinheriting an adopted child in favor of the kindred by blood, whom the adoptive parent had sought to exclude from participating in his estate by the adoption of the child of another. Rather in such case, it seems to me, a liberal operation and intendment should be given the statutes to support a proceeding taken in good faith thereunder. *Cofer v. Scroggins,* 98 Ala., 342; *Fosburg v. Rogers,* 114 Mo., 134.

Speaking to the question in *Nugent v. Powell,* 4 Wyo., p. 186, *Clark, J.,* said: "It must be admitted in the beginning that a proceeding in adoption was wholly unknown to the common law, and in our system of jurisprudence it is purely a statutory matter. Hence it follows that, in order to give any validity to such proceedings, they must have been conducted in substantial conformity with the provisions of the statute, and its requirements observed; but, notwithstanding this, it ought not to be overlooked, in the examination of cases growing out of the exercise of this statutory right, that the right is a beneficial one, both to the public and those immediately concerned in its exercise. . . . In cases of this kind it is not the duty of the court to bring the judicial microscope to bear upon the case, in order that every slight defect might be enlarged and magnified, so that a reason might be found for declaring invalid an act consummated years before, but rather approach the case with the inclination to uphold such acts, if it is found that there was a substantial compliance with the statute."

I recognize the force of the argument that the rights of parents over their children should not be lightly dealt with, or easily swept away, and with this I readily concur; but jealous as the law may be of the rights of natural parents over their children, with all due deference, it seems to me that in the case at bar this solicitude has reached the stage of "a vaulting ambition which o'erleaps itself and falls on t'other side." There are other adoption proceedings in North Carolina which may be affected by the present decision. I think we are setting a precedent which will rise up to trouble us in the future.

For the reasons given, I must dissent from the judgment to be rendered in this case.